**Steven A. DIAMOND, Plaintiff–Appellant,**

v.

**CITY OF TAFT, a Municipal Corporation, Defendant–Appellee.**

**No. 98–17253.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2000

Filed June 27, 2000

As Amended on Denial of Rehearing July 26, 2000.

Roger Jon Diamond, Santa Monica, California, for the plaintiff-appellant.

John D. Gibson (argued) and Edward Gordon, Gibson and Gibson, Bakersfield, California, for the defendants-appellees.

Before: BOOCHEVER, HAWKINS, and THOMAS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

We must decide the constitutionality of a local zoning ordinance concerning adult businesses. Steven A. Diamond ("Diamond"), prospective owner of an adult bookstore, sued the City of Taft ("Taft") challenging the constitutionality of Taft's zoning ordinance restricting the locations in which adult businesses can operate. The district court found the ordinance constitutional. We affirm.

## BACKGROUND

Taft is a small rural town in Kern County, California, with a population of about 6,800. In 1995, it amended its existing adult entertainment zoning ordinance to modify the locational restrictions on adult businesses.[1] The new ordinance provides that adult entertainment businesses are permissible only in zones designated commercial–1 ("C–1"), commercial–2 ("C–2"), manufacturing–1 ("M–1"), and manufacturing–2 ("M–2"), and may not be located within 1000 feet of any area zoned for residential use, any other adult entertainment business, any public or private school, park, playground, public building, church, commercial establishment operated by a bona fide religious organization, or any establishment "likely to be used by minors." *See* Taft Mun.Code §§ 6–31–3, 6–31–4 (1995).[2]

---

1. Taft began placing zoning restrictions on adult businesses in 1986. *See Diamond v. City of Taft*, 29 F.Supp.2d 633, 635 (E.D.Cal. 1998).

2. The ordinance also required that a conditional use permit ("CUP") be approved by Taft Council for any prospective adult entertainment business even if that business con-

Diamond owns a building on Center Street in Taft. He ran a pawn shop in the building for a number of years. In 1995, he decided to close the pawn shop and open an adult bookstore. Diamond's building does not meet the requirements of the ordinance because, although it is zoned C–2, it is within 1000 feet of parks, churches, and residences. Nevertheless, Diamond applied to Taft to use it for an adult business. After Taft rejected his proposal, he sued, seeking an injunction prohibiting Taft from enforcing the ordinance, along with monetary damages.

The district court found the ordinance constitutional. As in our related case of *Lim v. City of Long Beach*, 217 F.3d 1050, 1053–54 (9th Cir.2000), the only issue before the district court, and presented in this appeal, is whether the ordinance unreasonably limits alternative avenues of communication. *See City of Renton v. Playtime Theatres*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

At trial, Taft presented evidence that there were 20 potential alternative locations for adult businesses. The district court found that sites 1 through 6 met the requirements of the ordinance. Because sites 1–6 are located close together along the same street, the district court found that adult businesses could simultaneously be located only at site 1 and site 6. The district court also found that site 21 met the requirements of the ordinance. Site 21 is not within 1000 feet of sites 1–6. Thus, the district court concluded that because of the 1,000 foot requirement a total of three sites—1, 6, and 21—could be operated simultaneously. As Diamond was the only person who had ever sought to open an adult business in Taft, the district court found that these three sites were constitutionally sufficient alternative avenues of communication. *See Diamond*, 29 F.Supp.2d at 645–46.

forms to the locational and distance requirements. The CUP was invalidated by the

## STANDARD OF REVIEW

The district court's findings of fact are reviewed for clear error, *see Valley Eng'rs, Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1052 (9th Cir.1998), while its conclusions of law are reviewed de novo, *see Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir.1998). Mixed questions of law and fact are also reviewed de novo. *See United States v. City of Spokane*, 918 F.2d 84, 86 (9th Cir.1990). A mixed question of law and fact exists when there is no dispute as to the facts, the rule of law is undisputed, and the question is whether the facts satisfy the legal rule. *See Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *United States v. Lang*, 149 F.3d 1044, 1046 (9th Cir. 1998). Because there are no factual disputes in this case, we review the district court's decision de novo.

## ALTERNATIVE AVENUES OF COMMUNICATION

■ Diamond contends that Taft did not allow for alternative avenues of communication because it did not provide Diamond with a "reasonable opportunity to open and operate ... within the city." *Renton*, 475 U.S. at 54, 106 S.Ct. 925. We employ a two-step test to determine whether a city provides a sufficient number of alternative avenues of communication: (1) the relocation sites provided to adult businesses must be considered part of an actual business real estate market for commercial enterprises generally; and (2) after excluding those sites that may not be properly considered part of the relevant real estate market, there are an adequate number of alternative relocation sites. *See Topanga Press v. City of Los Angeles*, 989 F.2d 1524, 1530 (9th Cir.1993); *Lim*, slip op. at 6940–41.

district court and is not a subject of this appeal.

## A. Actual Business Real Estate Market

Diamond argues that the sites proffered by Taft are not part of the actual business real estate market because (1) they lack the required infrastructure, and (2) some of the properties are occupied.

 Diamond asserts that sites 1, 6, and 21 lack proper infrastructure because they do not have sidewalks or streetlights. In *Topanga Press,* we stated that areas in manufacturing zones may be included in the actual business real estate market as long as they have proper infrastructure. 989 F.2d at 1531; *Lim,* at 1054. We further noted that sidewalks, roads and lighting are examples of what may constitute proper infrastructure. *Id. Topanga Press* does not require that every site in a manufacturing zone have sidewalks, roads, and lighting; rather these are examples of what may constitute proper infrastructure. Sites 1, 6, and 21 are zoned for manufacturing. Because sites 1 and 6 are located along a state highway, and site 21 is located along a main driving thoroughfare, it is unlikely that people would walk along a sidewalk to reach businesses located at these sites. As such, sidewalks and street lights might be unnecessary. Further, these sites had other examples of infrastructure which may support a commercial enterprise, such as power, water, and access to a main road. *Cf. Levi v. City of Ontario,* 44 F.Supp.2d 1042, 1051 (C.D.Cal. 1999) (no evidence of infrastructure introduced).

By merely asserting that the sites lacked proper infrastructure, Diamond did not show that the sites were "inadequate for any generic commercial enterprise." *Topanga Press,* 989 F.2d at 1532. To rebut Taft's evidence, Diamond would have had to show that any generic commercial enterprise wanting to locate at sites 1, 6, and 21 would need sidewalks and streetlights. He did not make this showing.

 Diamond next argues that sites 1 and 6 were not part of the actual business real estate market because they were currently occupied. As we stated in *Lim,* a city cannot merely point to a random assortment of properties and assert that they form the basis of the actual real estate market. Slip op. at 1055. However, Taft made a reasonable and good faith attempt to designate numerous sites, including sites 1 and 6, as part of the actual business real estate market by providing "pertinent, specific and detailed information about each site." *Lim,* at 1055. Despite the current unavailability of these sites, Diamond did not offer sufficient evidence to show that these sites would not reasonably become available to any commercial enterprise.[3] As such, he did not rebut Taft's evidence. We assume that sites 1 and 6 will reasonably become available and we include them in the actual business real estate market.

## B. Sufficiency of Alternative Sites

 As we stated in *Lim,* at 1056, once the relevant market is defined, we must then determine whether the market contains a sufficient number of potential relocation sites for this adult business. Our overriding concern is that a city cannot "effectively deny[ ] [adult businesses] a reasonable opportunity to open and operate ... within the city...." *Renton,* 475 U.S. at 54, 106 S.Ct. 925. Once again, the touchstone is reasonableness.

 There is no constitutional requirement that a city make available a certain number of sites. *See Lakeland Lounge of Jackson, Inc. v. City of Jackson, Miss.,* 973 F.2d 1255, 1260 (5th Cir.1992). Most courts have employed one of two methods to determine whether there are a sufficient

---

**3.** Unlike the Plaintiffs in *Lim,* Diamond was given an opportunity to present evidence that the properties would not reasonably become available. Diamond offered evidence that site 6 was occupied by Kern Electric and Supply Company. The district court found the evidence offered by Diamond unreliable and insufficient. *See Diamond,* 29 F.Supp.2d at 637.

number of alternative sites: the percentage of land within the city available to adult businesses, or the number of sites compared with the number of adult businesses currently in existence or seeking to open. *See 3570 East Foothill Blvd., Inc. v. City of Pasadena,* 980 F.Supp. 329, 341 (C.D.Cal.1997). Where an ordinance imposes a distance requirement between adult businesses, most courts, including the district court below, have compared the number of sites in the relevant real estate market that could exist simultaneously with the number of adult businesses currently in existence or seeking to open. *See Diamond,* 29 F.Supp.2d at 645; *see also Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102, 1108 (9th Cir. 1988). The district court found that three sites can operate simultaneously and only one adult business was seeking to open. Therefore, it concluded, three sites were sufficient.

■ Diamond argues that the district court erred in finding that three sites were sufficient to allow him to open his business. We conclude that the proper measure of sufficiency is not the three sites that could exist simultaneously, but the total seven sites that are available under the ordinance.[4]

Because Diamond is the first person to seek to open an adult business in Taft, we need not worry about the forced relocation of existing adult businesses. In *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Supreme Court held constitutional a restrictive zoning ordinance that did not affect the operation of existing adult businesses because its restrictions expressly

only applied to new adult businesses. In *Young,* the district court specifically found that "[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones." 427 U.S. at 73 n. 35, 96 S.Ct. 2440 (quotations omitted). In *Renton,* the Court noted that the ordinance in question only affected the location of new adult businesses because there were no adult businesses in existence in Renton when the ordinance was enacted. 475 U.S. at 44, 106 S.Ct. 925. Similarly, there were no adult businesses in Taft when the ordinance was passed. As such, the Taft ordinance applies only to adult businesses seeking to open in Taft.

This might be a different case if Taft's ordinance required the closing and relocation of Taft's only adult business. In *Walnut Properties,* we held unconstitutional an ordinance that forced the closing of the only adult business within the city. 861 F.2d at 1110. In that case, we did not even specifically examine the exact number of potential relocation sites; it was enough that the ordinance "would force the only existing adult theater in Whittier to close at its present location with no definite prospect of a place to relocate." *Id.*

Because Diamond is the first person to seek to open an adult business in Taft, we also need not be concerned that the ordinance prohibits adult businesses from being located within 1,000 feet of one another. As the first person to seek to open an adult business in Taft, Diamond is not limited by the 1,000–foot restriction in choosing a site for his business. He can choose among all seven sites. Others who follow Diamond will be limited by the restriction, but he is not. Under these cir-

---

4. In arriving at our conclusion, we do not examine whether three sites would be sufficient to allow Diamond a reasonable opportunity to open and operate. We reiterate, however, that the touchstone here is reasonableness. An easy example reveals how a small ratio of sites to adult businesses may not allow an adult business a reasonable opportunity to open and operate. Assume one adult business in a city must relocate under a

new zoning ordinance. Under *Topanga Press,* a site with a restrictive lease banning adult businesses may be included in the actual business real estate market. 989 F.2d at 1531–32. No one would argue that if this site were the only property potentially available to the adult business, this one-to-one ratio would provide the adult business a reasonable opportunity to open and operate.

cumstances, we need only examine the total number of sites available.[5]

Generally, in cases where there is a restriction on the distance between adult businesses, a proper measure of sufficiency can only include the number of sites that could coexist because the total acreage of land in the relevant real estate market does not determine the number of sites available to adult businesses. *See, e.g., Walnut Properties,* 861 F.2d at 1108; *North Avenue Novelties, Inc. v. City of Chicago,* 88 F.3d 441, 445 (7th Cir.1996). We arrive at this conclusion because the "acreage available to the tenth or twentieth business to relocate would be 'dramatically less' than the [acreage] available to the first adult business." *Topanga Press,* 989 F.2d at 1533.

Under these circumstances, however, we are only concerned with Diamond's ability to open an adult business. Because Diamond can choose among all seven potentially available sites as a location for his adult business, the potential availability of seven sites in a community of the size of Taft is sufficient to allow Diamond an opportunity to open and operate. Therefore, the ordinance is constitutional.

AFFIRMED.

---

**5.** Although *Walnut Properties* suggests that the separation requirement between adult businesses should be taken into account even where only one adult business is affected, 861 F.2d at 1108–09, the court there did not have before it a specific number of sites; rather it was concerned that the only adult business in Whittier was closed with no "definite prospect of a place to relocate," *id.* at 1110.