770 A.2d 1028

**THE PACK SHACK, INC.,**

v.

**HOWARD COUNTY, Maryland.**

No. 606, Sept. Term, 2000.

Court of Special Appeals of Maryland.

April 24, 2001.

60

Howard J. Schulman (Schulman & Kaufman, LLC, on the brief), Baltimore, for appellant.

Brian S. Brown, Baltimore (Barbara M. Cook, Howard County Solicitor, Paul T. Johnson, Deputy County Solicitor and Louis P. Ruzzi, Senior Assistant County Solicitor, on the brief), Ellicott City, for appellees.

Argued before JAMES R. EYLER, KENNEY and WILLIAM W. WENNER (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

The Pack Shack, Inc., appellant, appeals from a judgment entered by the Circuit Court for Howard County in favor of Howard County, appellee. Appellant contends that a Howard County ordinance, enacted in 1997, violates the First Amendment to the United States Constitution and Article 40 of the Maryland Declaration of Rights. We disagree and, as a result, shall affirm the judgment of the circuit court.

### Factual Background

The legislation in question, introduced as Bill No. 65–1997 (hereinafter "Bill 65") and enacted by the County Council, added two new sections and amended other sections of the Howard County Zoning Regulations. Bill 65 defined adult entertainment businesses in new § 103.A.4.1 of the Howard County Code; set forth zoning requirements with respect to such businesses in new § 128.H of the Howard County Zoning Regulations; and amended § 115.B (POR District), § 116.B.28 (PEC District), § 118.B (B–1 District), § 119.B (B–2 District), and § 120.B (SC District)[1] to add adult entertainment busi-

---

1. The zoning regulations describe the districts as follows:

nesses as permitted uses, subject to the requirements contained in § 128.H.

Section 128.H.1, entitled "Purpose," provides:

These requirements are intended to allow suitable locations for adult entertainment uses while limiting their adverse secondary impacts on the community. Studies from other jurisdictions in the United States have demonstrated that adult entertainment uses, particularly when clustered in a particular area, are associated with increased crime levels, depreciation of property values, neighborhood deterioration, and negative perceptions of negative character. To lessen and control these impacts, to limit exposure to adult entertainment uses by children, and to control the spread of sexually transmitted diseases, these requirements require dispersal of adult entertainment uses and place certain other restrictions on their location and arrangement.

Subsection .2 states that adult entertainment businesses are permitted in districts where they are listed as permitted uses, and in NT or MXD Districts where they are allowed "by the applicable approved preliminary development plan, comprehensive sketch plan, or final development plan." Subsection .2 also provides that a structure housing an adult entertainment

---

B–1 District (Business: Local) is "established to provide areas of local businesses that can directly serve the general public with retail sales and services"; B–2 District (Business: General) is "established to provide for commercial sales and services that directly serve the general public"; the SC District (Shopping Center) is "established to permit local retail and office use areas"; POR District (Planned Office Research) District is "established to permit and encourage diverse institutional, commercial, office research and cultural facilities"; PEC District (Planned Employment Center) is "established to provide for comprehensively planned employment centers combining research and development, office, light manufacturing and assembly, limited commercial and other enumerated uses"; NT District (New Town) is "an unincorporated city, town or village which is designated and planned as an economically and culturally self-sufficient community with the population of at least 20,000 inhabitants"; and the MXD District (Mixed Use) is "established to permit flexible and efficient use of large parcels at key locations by combining housing, employment, local commercial and open spaces uses in accordance with a unified design."

business shall be at least 2,500 feet from any similar business. In addition, all adult entertainment businesses must be at least 500 feet from residential zoning districts, from residential areas in the NT or MXD Districts, and from the boundary of a parcel occupied by a school, child day care center, religious facility, public library, public park, or public recreational facility.

Subsection .5 provides that an adult entertainment business that was established prior to the effective date of § 128.H and does not conform to the bill's requirements may continue to operate until one year after the effective date.

Subsection .6 mandates that an annual zoning permit is required for any adult entertainment business prior to commencing operation of the business, or in the case of an existing business, application for a permit must be made within 30 days of the effective date of the permit requirement. The application is to be made to the Department of Planning & Zoning, the director must act on the application within 30 days of its receipt, and the permit must be approved if the use complies with § 128.H. Subsection .6 further provides that the applicant may commence operation of the business after application but before the permit is approved, and if the permit is denied, the applicant may continue to operate the business during the appeal process.

The parties stipulated that appellant was operating an adult entertainment business, as defined in the bill (§ 103.A.4.1), located at 8445 Baltimore National Pike in Ellicott City. As previously mentioned, section 128.H allowed an amortization period of one year from the effective date of the legislation, *i.e.*, until February 3, 1999, during which period an adult entertainment business established prior to February 3, 1998 could continue to operate. The parties stipulated that appellant was in operation prior to February 3, 1998. The parties also stipulated that appellant was and is in violation of § 128.-H.2.D of the Howard County Zoning Regulations, in that it is situated approximately 165 feet from the boundary of a residential district.

■ On February 5, 1999, appellant filed a complaint against appellee seeking declaratory and injunctive relief, alleging that Bill 65 was invalid under Article 40 of the Maryland Declaration of Rights.[2] Subsequently, appellant amended the complaint to assert a violation of 42 U.S.C. § 1983, in that the bill violated the First Amendment to the United States Constitution.[3] Appellee filed a counterclaim seeking enforcement of the bill as enacted and a third-party claim against Barry M. Mehta and Chara Patel Mehta, owners of the property at 8445 Baltimore National Pike. The circuit court, after a trial, found that the ordinance was content-neutral and thus did not employ a strict scrutiny analysis. The court declared Bill 65 valid and enjoined appellant and third-party defendants from using the property in violation of § 128.H.

## Questions Presented

I. Did the trial court err by failing to apply strict scrutiny analysis or, alternatively, in failing to properly apply the intermediate scrutiny test?

II. Did the trial court err in finding that the Howard County Adult Book and Video Store law provided sufficient alternative avenues of communication when the court did not apply the correct standard of review?

---

**2.** Article 40 of the Maryland Declaration of Rights provides: "That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." As this Court stated in *Landover Books, Inc. v. Prince George's County*, 81 Md.App. 54, 76, 566 A.2d 792 (1989), "[t]he guaranty of freedom of speech under Art. 40 is substantially similar to that enunciated in the First Amendment and should not be interpreted differently."

**3.** The First Amendment states "Congress shall make no law ... abridging the freedom of speech, or of the press...." This Amendment is made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 52 n. 1, 96 S.Ct. 2440, 2443 n. 1, 49 L.Ed.2d 310 n. 1 (1976)(plurality).

III. Do the Adult Entertainment Law licensing provisions create an unconstitutional prior restraint?

**Discussion**

**I.**

We begin with the following basic principles. Under First Amendment jurisprudence, a content-based law is subject to a strict scrutiny analysis, is presumptively impermissible, and is upheld only if there is a compelling reason for its enactment. *See United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 813, 120 S.Ct. 1878, 1886, 146 L.Ed.2d 865, 879 (2000)(stating that a content-based speech restriction can only stand if it satisfies strict scrutiny and, as such, "it must be narrowly tailored to promote a compelling Government interest."); *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29, 37 (1986)(stating that the Supreme Court "has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment."). A law is content-based if it suppresses or restricts the expression of views. *See Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 642, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497, 517 (1994)(stating that "[o]ur precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content.").

A law is content-neutral if it is *"justified* without reference to the content of the regulated speech." *Renton,* 475 U.S. at 48, 106 S.Ct. at 929, 89 L.Ed.2d at 38 (alteration in original) (citations omitted). Zoning ordinances created to combat the negative secondary effects that stem from businesses that purvey sexually explicit materials are to be reviewed under the standards applicable to content-neutral time, place, and manner regulations. *Id.* at 49, 106 S.Ct. at 929–30, 89 L.Ed.2d at 38–39 (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310, 326 (1976)(plurality)). As the Supreme Court stated in

*Renton,* 475 U.S. at 47, 106 S.Ct. at 928, 89 L.Ed.2d at 37, the "so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication" (heightened or intermediate scrutiny).

Appellant, asserting that (1) the bill in question was introduced shortly after appellant opened its business and (2) the express intent of the bill's sponsor and other Council members was to make the bill as restrictive as legally possible, concludes that the intent of the bill was to restrict the number of stores by limiting the number of potentially available sites. Appellant concludes that, as a result, the bill was content-based. In other words, appellant asserts that the evidence demonstrated that the express purpose was to restrict stores, as opposed to addressing the secondary effects of such stores. Specifically, appellant points to the following:

1. Reports and maps prepared by the Department of Planning & Zoning detailed potentially available sites and indicated that the only two existing adult entertainment stores in Howard County would be required to close at their existing locations.

2. The exclusion of adult entertainment stores from manufacturing zones, despite the Department of Planning & Zoning's recommendation that residential and other protected uses were best insulated from secondary effects by limiting the stores to manufacturing zones.

3. A recommendation by the Department of Planning & Zoning that limitations of the type enacted would not permit alternative sites.

4. A report by the Department of Planning & Zoning advising that the location of adult entertainment stores in B–1 and SC Districts, and in smaller tracts of the B–2 District, was inappropriate for adult entertainment businesses because the Districts were located close to residential areas, and thus the secondary effects would not be ameliorated.

5. The limitation of adult entertainment stores to B–1, B–2, and SC Districts, where there were very few available sites.

6. The appearance of potentially available sites created by permitting adult entertainment stores in Planned Employment Centers and Planned Research Centers, in which little commercial land was actually available.

7. The enactment of amendments to the bill without a Department of Planning & Zoning study with respect to the effects of the amendments in conjunction with other restrictions in the bill, despite the County Solicitor's recommendation that the Council have that information.[4]

Alternatively, appellant contends that the circuit court committed error even if the heightened scrutiny standard applies. Appellant explains that appellee was required to articulate governmental interests in order to justify the bill, and the circuit court was required to make findings that the bill furthered content-neutral goals. Specifically, appellant claims that the court should have made findings that identified the secondary effects, the existence of those effects, and how the bill would ameliorate the effects. Appellant contends that there was no such analysis and no evidence.

Appellee contends that locational requirements are valid and that the motive or intent of the legislators is irrelevant. The question is whether the ordinance is justified, not the motives of legislators or concerned citizens. According to appellee, the appropriate standard is heightened scrutiny because the bill was part of a recognized zoning mechanism aimed at the secondary effects of adult entertainment businesses. Appellee asserts that the bill does not proscribe nor regulate content, and consequently, the bill is valid if it serves

---

4. Appellant appears to be referring to a letter from the County Solicitor to the Vice Chairman of the County Council, in which the County Solicitor referred to an amendment to the bill. The County Solicitor stated that it appeared to be legally sufficient, but further stated that she was unable to determine its impact and suggested that the Department of Planning and Zoning be asked to analyze it in conjunction with other proposed amendments to the bill.

governmental interests and allows reasonable alternative avenues of communication.

Appellee asserts that the Howard County Council considered numerous reports from other jurisdictions addressing the detrimental effects of adult entertainment businesses. Appellee states that the record supports a legitimate governmental interest and that the circuit court so found. Appellee further posits that the *Renton* case indicates that reliance on data from other jurisdictions is acceptable and that new studies are not required.

■ We reject appellant's argument that the bill was content-based, and thus we decline to apply strict scrutiny. Appellant argues that evidence demonstrated that an express purpose of the bill was to restrict adult entertainment businesses, as opposed to addressing the secondary effects resulting from such businesses. The Supreme Court in *Renton,* however, specifically rejected the argument that "if '*a motivating factor*' in enacting the ordinance was to restrict respondents' exercise of First Amendment rights the ordinance would be invalid, apparently no matter how small a part this motivating factor may have played in the City Council's decision." 475 U.S. at 47, 106 S.Ct. at 929, 89 L.Ed.2d at 38. As the Supreme Court stated:

It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive....

. . . .

... What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

*Id.,* 475 U.S. at 48, 106 S.Ct. at 929, 89 L.Ed.2d at 38 (quoting *United States v. O'Brien,* 391 U.S. at 383–84, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968)); *see also City of Erie v. Pap's A.M.,* 529 U.S. 277, 280, 120 S.Ct. 1382, 1392–93, 146 L.Ed.2d 265, 281 (2000)(reiterating that the Court "will not strike down an otherwise constitutional statute on the basis of an alleged

illicit motive" and upholding a ban on public nudity because, "[i]n light of the Pennsylvania court's determination that *one purpose* of the ordinance is to combat harmful secondary effects, the ban on public nudity here is no different from the ban on burning draft registration cards in *O'Brien,* where the Government sought to prevent the means of the expression and not the expression of antiwar sentiment itself.")(emphasis added); *Workers' Compensation Comm'n v. Driver,* 336 Md. 105, 118, 647 A.2d 96 (1994)("[i]t is well-settled that when the judiciary reviews a statute or other governmental enactment, either for validity or to determine the legal effect of the enactment in a particular situation, the judiciary is ordinarily not concerned with whatever may have motivated the legislative body or other governmental actor.").

The Supreme Court has recognized locational requirements as a "valid governmental response" to the serious problem created by adult theaters and has determined that such requirements may withstand First Amendment scrutiny. *Renton,* 475 U.S. at 54, 106 S.Ct. at 932, 89 L.Ed.2d at 42. In *Renton,* the Court observed that the ordinance in question stated that it was designed "to prevent crime, protect the city's retail trade, maintain property values, and generally '[protect] and [preserve] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views." *Id.* at 48, 106 S.Ct. at 929, 89 L.Ed.2d at 38. Accordingly, the Court determined that "the Renton ordinance is completely consistent with our definition of 'content-neutral' speech regulations as those that 'are *justified* without reference to the content of the regulated speech.' " *Id.* (citations omitted). As the *Renton* Court stated, zoning ordinances designed to alleviate the secondary effects of businesses that purvey sexually explicit materials are reviewed under the standards applicable to content-neutral time, place, and manner regulations. *See Renton,* 475 U.S. at 49, 106 S.Ct. at 929–30, 89 L.Ed.2d at 39 (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)(plurality)).

Subsequent to the *Renton* opinion, the analysis employed by the Supreme Court has been applied by this Court to declare the constitutionality of locational requirements applicable to adult bookstores. *See Landover Books, Inc. v. Prince George's County,* 81 Md.App. 54, 73, 566 A.2d 792 (1989). As this Court stated in *Landover Books,* 81 Md.App. at 71, 566 A.2d 792:

> Under *Renton* and *American Mini Theatres,* we conclude that the zoning ordinance in the instant case is properly analyzed as a time, place and manner restriction since the challenged ordinance, like that in *Renton* and *American Mini Theatres,* does not ban adult bookstores altogether. Instead, it prohibits adult bookstores from locating within 1,000 feet of any residential zone, school, library, park, playground, recreational facility or church. Thus, the dissemination of the adult bookstore's inventory at other locations is not restricted. So long as the protected materials continue to be fully available and public access to them is not substantially impaired, time, place and manner regulations do not offend the First Amendment.

In the instant case, section 128.H.1 of Bill 65 stated that its purpose was to lessen adverse secondary impacts in the community resulting from adult entertainment businesses. These secondary impacts were described as "increased crime levels, depreciation of property values, neighborhood deterioration, and negative perceptions of negative character." The bill was intended "[t]o lessen and control these impacts, to limit exposure to adult entertainment uses by children, and to control the spread of sexually transmitted diseases . . . ." Thus, the bill in the instant case is properly analyzed as a time, place, and manner restriction because the ordinance does not ban adult bookstores altogether; rather, it restricts their location to certain areas. *See Landover Books,* 81 Md.App. at 71, 566 A.2d 792.

■ The appropriate inquiry when examining content-neutral time, place, and manner restrictions directed at businesses which disseminate sexually explicit materials is whether the

ordinance is "designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 106 S.Ct. at 930, 89 L.Ed.2d at 39; *see also Annapolis Rd., Ltd. v. Anne Arundel County*, 113 Md.App. 104, 119, 686 A.2d 727 (1996), *rev'd on other grounds*, 349 Md. 542, 709 A.2d 740 (1998); *Landover Books*, 81 Md.App. at 72, 566 A.2d 792. Appellant argues that even if the court applied the correct test, it did so incorrectly. According to appellant, the trial court should have made specific findings that identified the secondary effects that the bill was intended to combat, the existence of those effects, and how the bill would ameliorate the effects.

Both Supreme Court and Maryland precedent establish that ordinances aimed at preserving the quality of life in the community reflect a substantial government interest. *See Renton*, 475 U.S. at 54, 106 S.Ct. at 928, 89 L.Ed.2d at 42 (upholding the Renton ordinance as a valid governmental response to the serious problems caused by adult theaters by "mak[ing] some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas."); *American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. at 2453, 49 L.Ed.2d at 327 (plurality)(stating that "the city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."); *Landover Books*, 81 Md.App. at 72, 566 A.2d 792 (stating that "[t]he County's interest in preventing an adverse impact on neighboring properties and children is a substantial government interest.").

The *Renton* Court specifically rejected the contention that the First Amendment dictates that a local government "before enacting such an ordinance, [ ] conduct new studies or produce evidence independent of that already generated by other cities." 475 U.S. at 51–52, 106 S.Ct. at 930–31, 89 L.Ed.2d at 40. Local governments may rely on data and studies conducted by other cities. *Id.* The government interests justifying the legislation need not be based upon

"specific local experiences and conditions." *Landover Books,* 81 Md.App. at 75, 566 A.2d 792 (quoting *Wall Distributors, Inc. v. City of Newport News,* 782 F.2d 1165, 1169–70 n. 2 (4th Cir.1986)). As we stated in *Landover Books,* "the test is whether the Council, when enacting the ordinance, had evidence which it reasonably believed was relevant to the problems the County sought to address." 81 Md.App. at 73, 566 A.2d 792.

■■■ In the instant case, the Howard County Council received into the legislative record eighteen studies and reports from other jurisdictions which documented the experiences of other local governments in addressing the detrimental effects of adult entertainment uses. The trial court expressly found that the ordinance did not prohibit pornography, that it regulated the location of adult entertainment businesses for the purpose of combating the known secondary effects from their uses, and that the bill was content-neutral. The bill on its face delineated the secondary effects that it was intended to combat. We are not aware of any case law which mandates that a trial court make further findings identifying the existence of secondary effects in a locality and exactly how the bill will alleviate them. In fact, in *Renton,* at the time of the enactment of the zoning ordinance restricting the location of adult motion picture theaters, the City of Renton did not even have "any business whose primary purpose is the sale, rental, or showing of sexually explicit materials." 475 U.S. at 52, 106 S.Ct. at 931, 89 L.Ed.2d at 41. Accordingly, we reject appellant's argument that the circuit court was required to make additional findings.

■■■ The test is whether the Howard County Council had evidence before it which it reasonably believed was relevant to the problems the Council sought to address. The trial court found "that the legislative record as a whole supports a legitimate interest which the Council reasonably believed relevant to the problems it sought to address in the bill ....[t]his constitutes a reasonable basis for the Council to believe that the bill would further its stated purposes." We agree that the

legislative record supported this finding. Accordingly, we hold that the trial court did not err in its application of the intermediate scrutiny standard.

## II.

Appellant contends that the circuit court erred in finding that there were sufficient alternative avenues of communication. Appellant asserts that a time, place, and manner law, assuming this is such, must permit ample space for adult entertainment uses and must not substantially reduce the number of adult entertainment stores or significantly reduce accessibility to patrons of those stores.

Appellant's expert, Shep Tullier, concluded that there were four sites economically viable under the bill and also conceded that there were twelve sites potentially available. Appellant points out that the circuit court essentially adopted that testimony in finding that there were between four and twelve sites available under the legislation. Appellant further points out the undisputed fact that there are 160,639 acres in Howard County. Four sites or twelve sites, assuming that each is one acre in size, constitutes less than one percent of the total acreage. Appellant asserts that this is a minuscule amount in comparison to the amount available in other reported cases upholding laws similar to the one involved in this case. The net result, according to appellant, is that there is no reasonable opportunity for appellant to relocate and that the law effectively eliminated or will eliminate the only two existing locations. Appellant, as it did with respect to the first issue, also asserts that the circuit court's findings are inadequate.

Appellee argues that the identity of zones and setbacks is a matter of legislative judgment, as long as it is within constitutional limitations. Accordingly, appellee did not have to prove whether exclusion or inclusion in a particular district advanced a state interest. Appellee asserts that the focus is properly on the legislation as a whole. Furthermore, appellee states that the *Renton* test is whether the ordinance effectively denied a reasonable opportunity to open and operate an adult enter-

tainment store. Appellee concludes that the circuit court properly applied that standard in determining that the bill allowed for reasonable, alternative avenues of communication.

In this case, the Director of Planning & Zoning testified that there were at least 23 potential sites. Only two adult entertainment stores are located in Howard County. The total area in Howard County in compliance with the bill is 1,000 acres, which constitutes 7% of the county's non-residential area. No one has applied for a permit under the bill.

Appellee asserts that a total of 111 properties comply with the requirements of the bill in the absence of the 2,500 foot separation requirement. Relying upon *Diamond v. Taft,* 215 F.3d 1052, 1057 (9th Cir.2000), in which the Ninth Circuit stated that a 1,000 foot spacing requirement was not applicable when the applicant was the first to open an adult business, appellee argues that the total number of sites should not be restricted to 23 because the number of sites is reduced to 23 only when the 2,500 foot separation requirement is imposed.

Additionally, appellee asserts that 90% of the county's total acreage is zoned for residential use, in which all commercial use is prohibited. Over one-half of the remaining 10% is zoned for manufacturing or heavy industrial use, in which retail businesses generally are prohibited. Consequently, 95% of the county's land is unavailable to any retail user. As a result, appellee asserts that cases addressing dense urban areas are not applicable. Additionally, there is no evidence that anyone has attempted to buy or lease any of the potentially available sites. Thus, according to appellee, the bill does not reduce the total number of stores or significantly reduce access to patrons.

As the Supreme Court stated in *Renton,* 475 U.S. at 54, 106 S.Ct. at 932, 89 L.Ed.2d at 42, "[w]e have cautioned against the enactment of zoning regulations that 'have the effect of suppressing, or greatly restricting access to, lawful speech' ...." (quoting *American Mini Theatres,* 427 U.S. at 71, n. 35, 96 S.Ct. at 2453 n. 35, 49 L.Ed.2d at 327 n. 35)(plurality). The Court noted, however, that the fact that prospective adult

bookstore operators must compete in the real estate market with other prospective purchasers and lessees does not create a violation of the First Amendment. *Id.* Instead, "the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city. . . ." *Id.*

We had occasion to apply the *Renton* principles in *Landover Books, Inc. v. Prince George's County,* 81 Md.App. 54, 566 A.2d 792 (1989), and *Annapolis Rd., Ltd. v. Anne Arundel County,* 113 Md.App. 104, 686 A.2d 727 (1996), *rev'd on other grounds,* 349 Md. 542, 709 A.2d 740 (1998). In *Landover Books,* the plaintiff contended that the Prince George's County zoning ordinance, as it applied to adult bookstores, violated the First Amendment. With respect to the issue of whether reasonable alternative avenues of communication were available, we stated:

> In his affidavit, Dale C. Hutchison, Chief of the Zoning Division of the Maryland–National Capital Park & Planning Commission, estimated that there are approximately 20 commercial or industrial areas of the County with sufficient commercially or industrially zoned land within each area to meet the 1,000–foot [5] distance requirement. Since there are only seven adult bookstores currently operating in the County, there are 13 available spots where adult bookstores could operate. Since Landover did not submit any evidence to contradict Hutchison's findings, we conclude that there are sufficient alternative sites available for the establishment of adult bookstores.

*Landover Books,* 81 Md.App. at 76, 566 A.2d 792.

In *Annapolis Rd., Ltd.,* the plaintiff attacked the Anne Arundel County zoning ordinance, which, *inter alia,* restricted adult bookstores and adult motion picture theaters to C–4 (highway commercial) and W–3 (heavy industrial) zones as

---

**5.** The ordinance prohibited adult bookstores from locating within 1,000 feet of any school building or any church.

conditional uses. With respect to the issue of reasonable alternative means of communication, we stated:

> The county presented uncontradicted evidence before the circuit court that there were 81 sites in the county, comprising some 2,300 acres (just under 1% of the total land in the county), on which adult bookstores or adult motion picture theaters could lawfully be located. All but one of the sites had road access; two had existing sewer service; 58 had planned sewer service; 21 had existing water service; 60 had planned water service; 37 were improved with buildings; the rest were either unimproved or improved with other structures. Although appellants now complain about the lack of utility service and posit that some sites may be inconvenient for other reasons, they offered no evidence with respect to the characteristics of those sites, to show that they could not be used or adapted for use as adult bookstores or adult motion picture theaters.

*Annapolis Rd., Ltd.,* 113 Md.App. at 131, 686 A.2d 727.

In determining whether an ordinance allows for reasonable alternative means of communication, our reading of the Supreme Court decision in *Renton* and other decisions applying *Renton* principles, including those cited by the parties herein,[6] is that the focus is on the ability of operators of businesses to provide the public with access and on the ability of the public to gain access. *See D.H.L.,* 199 F.3d at 59 stating that the essence of the question of whether reasonable alternative methods of communication exist "is not 'whether a degree of curtailment' of speech exists, but rather 'whether

---

**6.** Appellants rely primarily on *Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102 (9th Cir.1988), and *Alexander v. City of Minneapolis,* 698 F.2d 936 (8th Cir.1983). Appellee relies primarily on *D.H.L. Associates, Inc. v. O'Gorman,* 199 F.3d 50 (1st Cir.1999), *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1965, 146 L.Ed.2d 796 (2000), *Lakeland Lounge of Jackson, Inc. v. City of Jackson,* 973 F.2d 1255 (5th Cir.1992), *Diamond v. City of Taft,* 215 F.3d 1052 (9th Cir.2000), *St. Louis County v. B.A.P., Inc.,* 18 S.W.3d 397 (Mo.Ct.App.2000), *Woodall v. City of El Paso,* 49 F.3d 1120 (5th Cir.1995), *modified,* 959 F.2d 1305 (5th Cir.), and *Alexander and U.S. Video, Inc. v. City of Minneapolis,* 928 F.2d 278 (8th Cir.1991).

the remaining communicative avenues are adequate.' " (quoting *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 745 (1st Cir.1995)). In *Annapolis Rd., Ltd.*, we declined to adopt a specific standard, noting that certain courts have done so. 113 Md.App. at 132, 686 A.2d 727; *see Woodall v. City of El Paso*, 950 F.2d at 263 (alternative sites need not be commercially viable, but their physical and legal characteristics must not make it "impossible for any adult business to locate there.") and *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1531 (9th Cir.1993) (the test is whether the alternative sites are within the "relevant real estate market," thus excluding from consideration sites comprising "swamps," "warehouses," and "sewage treatment plants."). We again decline to adopt a standard more specific than that enunciated by the Supreme Court. We will apply the *Renton* standard on a case-by-case basis.

In determining whether reasonable alternative avenues of communication exist, it is appropriate to look at the physical and legal characteristics of alternative sites and to assess their economic viability, but that assessment should be done in the context of considering the circumstances as a whole. A business operator of a speech-related business must compete in the market place and is not entitled to a preference. *Renton*, 475 U.S. at 54, 106 S.Ct. at 932, 89 L.Ed.2d at 42. Furthermore, the fact that sites are commercially undesirable is not determinative. *See id.* On the other hand, if the alternative sites available are such that it is practically impossible to avoid a suppression of speech, the First Amendment has been violated. *See id.* (stating that "the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city. . . .").

In the case before us, the circuit court found that "as a practical and economic matter, there are less than 23 potential sites." The court then observed that the existence of 4 to 12 sites, as testified to by appellant's expert, did not violate the First Amendment, especially in light of the fact

that there were only two existing businesses in the county and no effort by anyone to acquire or utilize any of the available or potentially available sites. We agree.

 Two existing businesses in Howard County are affected by the ordinance. It is noteworthy and of concern that application of the ordinance will cause appellant to relocate.[7] The effect on the other business is not clear from the record before us, but it appears that the current location of the other business is in violation of the ordinance. Nevertheless, we hold that the alternative sites are adequate, given the level of demand demonstrated in this record. The record indicates that there has been no effort by anyone to acquire or utilize any of the potential sites. It is appropriate to view the number of sites in existence in light of the number of existing businesses and the number of businesses seeking to open. *See D.H.L. Associates, Inc.* at 59–60 (citing *3570 E. Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1257, 1265 (C.D.Cal.1995)). At present time, there are more sites available than there is demand for the sites. *See D.H.L. Associates, Inc.,* 199 F.3d at 60–61 (upholding an ordinance as providing reasonable alternative avenues for protected speech for adult entertainment businesses, even though the ordinance left only five sites for two existing businesses, and the owner of the land in these five sites had previously expressed distaste for adult entertainment establishments); *Lakeland Lounge of Jackson, Inc. v. City of Jackson,* 973 F.2d 1255, 1260 (5th Cir.1992)(stating that even if only eight to ten sites were available for six adult entertainment establishments "[a]s a matter of arithmetic ... there are more 'reasonable' sites available than businesses with demands for them" and stating that "[g]iven the limited demand for sites for sexually oriented businesses, this ordinance does not reduce the number of establishments that can open in Jackson, so it does not limit

---

**7.** The fact that the ordinance affects existing establishments and not just new establishments is a factor to be considered. *See American Mini Theatres,* 427 U.S. at 73 n. 35, 96 S.Ct. at 2453 n. 35, 49 L.Ed.2d at 327 n. 35 (plurality); *Diamond,* at 1057.

expression."). Accordingly, we hold that the circuit court committed no error in finding that there were sufficient alternative avenues of communication.

## III.

Appellant contends that the licensing provision is invalid. Appellant asserts that a license for a First Amendment protected business must be issued within a reasonable period of time and must be subject to prompt judicial review. Appellant argues that the bill in question does not provide for prompt judicial review.

Appellee asserts that there is no prior restraint because the bill permits businesses to operate during the pendency of the licensing process and during any appeal.

 As the Court of Appeals stated in *Jakanna Woodworks, Inc. v. Montgomery County,* 344 Md. 584, 599, 689 A.2d 65 (1997), "[a] statute, ordinance, or regulation that prevents expression unless and until a license or permit is obtained from a governmental official or group is a prior restraint on speech." Such prior restraints pose the risk of "unduly suppressing protected expression." *Id.* (citing *Freedman v. Maryland,* 380 U.S. 51, 54, 85 S.Ct. 734, 737, 13 L.Ed.2d 649, 652 (1965)); *see also Alexander v. United States.,* 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441, 450 (1993) ("[t]he term 'prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.") (alteration in original)(quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, p. 4–14 (1984)). Prior restraints often involve "either an administrative rule requiring some form of license or permit before one may engage in expression, or a judicial order directing an individual not to engage in expression, on pain of contempt." *See* Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 15.1, p. 15–4 (2000).

■■■■■■ Due to the risk inherent in prior restraints, there is a heavy presumption against their constitutional validity. *Jakanna Woodworks*, 344 Md. at 599, 689 A.2d 65 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584, 593 (1963)); *see also 11126 Baltimore Boulevard, Inc. v. Prince George's County*, 58 F.3d 988, 996 (4th Cir.1995)(en banc)(stating that "[t]he guarantee of freedom of speech afforded by the First Amendment is abridged whenever the government makes enjoyment of protected speech contingent upon obtaining permission from government officials to engage in its exercise under circumstances that permit government officials unfettered discretion to grant or deny the permission."). In order to overcome that burden, sufficient procedural safeguards must exist to guard against unduly suppressing protected speech. *Jakanna Woodworks*, 344 Md. at 599, 689 A.2d 65 (citing *Freedman*, 380 U.S. at 58–60, 85 S.Ct. at 738–39, 13 L.Ed.2d at 654–55).

In *Freedman*, a filmmaker challenged a Maryland statute that prohibited the sale or exhibition of any film lacking a license from the State Board of Censors. The filmmaker argued that the statute risked unduly suppressing protected expression because exhibition of any film was prohibited until the Board made a decision, or, if the license was denied, until the exhibitor could pursue an appeal in the Maryland courts. *Freedman*, 380 U.S. at 54–55, 85 S.Ct. at 737, 13 L.Ed.2d at 652. The Supreme Court outlined three procedural safeguards necessary to ensure expeditious decision-making by the film censorship board:

(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227, 110 S.Ct. 596, 606, 107 L.Ed.2d 603, 619 (1990)(citing *Freedman*, 380 U.S. at 58–60, 85 S.Ct. at 739, 13 L.Ed.2d at 654–55). The Court held that the Maryland film statute was unconstitutional because it

failed to provide any of the procedural safeguards. *Freedman*, 380 U.S. at 59–60, 85 S.Ct. at 739–40, 13 L.Ed.2d at 655.

Since the *Freedman* decision, Supreme Court cases addressing prior restraints have tended to focus on two types of faulty schemes: "(1) a scheme that places unfettered discretion in the hands of a government official or group to grant or deny a permit or license, and (2) a scheme that does not place limits on the time within which the decision maker must issue the permit or license." *Jakanna Woodworks*, 344 Md. at 600, 689 A.2d 65 (citing *FW/PBS*, 493 U.S. at 225–26, 110 S.Ct. at 604–05, 107 L.Ed.2d at 618).

■■■ We note that appellant is raising a facial challenge to the licensing scheme. Although facial challenges are usually disfavored, such challenges "have been permitted in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223, 110 S.Ct. 596, 604, 107 L.Ed.2d 603, 616–17 (1990)(stating further that facial challenges have been permitted "where a [licensing] scheme creates a 'risk of delay' [ ] such that 'every application of the statute create[s] an impermissible risk of suppression of ideas . . . .'") (citations omitted); *see also Chesapeake B & M, Inc. v. Harford County*, 58 F.3d 1005, 1010 (4th Cir.1995)(stating that a facial challenge was proper because an adult bookstore alleged that the licensing law failed to ensure expeditious decision-making). As the Fourth Circuit stated in *Chesapeake B & M*, "unbridled discretion exists when a licensing scheme lacks adequate procedural safeguards to ensure a sufficiently prompt decision." 58 F.3d at 1010 (citing *11126 Baltimore Boulevard, Inc. v. Prince George's County*, 58 F.3d 988 (4th Cir.1995)(en banc)).

■■■ We hold that the zoning permit requirement in the instant case is not a prior restraint. Section 128.H6 of the zoning ordinance provides that an applicant may begin operating an adult entertainment business after applying for the zoning permit, but before such permit is approved. Further-

more, § 128.H6 allows an applicant to continue to operate an adult entertainment business pending the outcome of an appeal of a denial of a permit. Therefore, the ordinance is not one which "prevents expression unless and until a license or permit is obtained." *See Jakanna Woodworks,* 344 Md. 584, 599, 689 A.2d 65. Because an applicant for a zoning permit for an adult entertainment business may continue to operate throughout the application and appeals process, the ordinance does not have the effect of freezing protected speech. *See id.* at 599, 689 A.2d 65 (stating that prior restraints present the risk of "unduly suppressing protected expression.").

 Even assuming *arguendo* that the licensing requirement is a prior restraint, we hold that it is not an unconstitutional prior restraint. As stated by the Court in *11126 Baltimore Boulevard,* the Supreme Court "has made clear that otherwise valid content-neutral time, place, and manner restrictions that require governmental permission prior to engaging in protected speech must be analyzed as prior restraints and are unconstitutional if they do not limit the discretion of the decisionmaker and provide for the *Freedman* procedural safeguards." 58 F.3d at 995; *see also FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)(holding that a Dallas business licensing scheme for sexually oriented businesses constituted an unconstitutional prior restraint on protected speech because it failed to impose adequate procedural safeguards to ensure a prompt decision on a license application and prompt judicial review of a denial).

Section 128.H is not an invalid prior restraint on speech. While an annual zoning permit is required for any adult entertainment business prior to commencing business, the director of the Department of Planning & Zoning is not vested with any discretion in whether to grant or deny the permit. According to § 128.H.6, if an adult entertainment business, a permitted use, files an application for a zoning permit and meets the locational requirements, the permit must be approved. Thus, the ordinance does not "place[ ] unfettered discretion in the hands of a government official or group to

grant or deny a permit or license. . . ." *Jakanna Woodworks,* 344 Md. at 600, 689 A.2d 65 (citing *FW/PBS,* 493 U.S. at 225–226, 110 S.Ct. at 604–05, 107 L.Ed.2d at 618).

Furthermore, the ordinance places adequate constraints on the time within which the director must make a decision. Pursuant to § 128.H.6, the director must act on the application within 30 days of its receipt. Thus, the provision meets the *Freedman* requirement "that the time limitation be either explicitly stated in the ordinance itself or established by authoritative judicial construction." *Jakanna Woodworks,* 344 Md. at 610, 689 A.2d 65 (citing *Freedman,* 380 U.S. at 58–59, 85 S.Ct. at 739, 13 L.Ed.2d at 654–55).

As for the prompt judicial review requirement, we hold that the time required to go through the appellate process is irrelevant because the ordinance provides that adult entertainment businesses may continue to operate pending appeal. In *11126 Baltimore Boulevard, Inc.,* 58 F.3d at 992–93, an adult bookstore ordinance contained no provision for judicial review, but the parties agreed that Maryland law provided for judicial review of final administrative decisions. The court noted that under the procedural rules of Maryland, "an adult bookstore seeking review of an administrative denial of a special exception would face a delay of up to 93 days before briefing could be concluded, assuming that the bookstore could complete each of the steps in the process with which it is charged within one day." *Id.* at 992–93. Concluding that "prompt judicial review" refers to "prompt judicial determination," not simply prompt access to the court system, the court rejected the proposition that "a delay in excess of three months for judicial decision, following a 150–day time frame for an administrative decision, ensures a sufficiently prompt judicial review." *Id.* at 999–1001; *see also Annapolis Rd., Ltd.,* 113 Md.App. at 128–29, 686 A.2d 727 (holding that a judicial process that takes in excess of 93 days was an unreasonable prior restraint on protected speech).

Analogous to the *11126 Baltimore Boulevard, Inc.* case, the ordinance in the instant case contains no provision regarding a

time period for judicial review. Furthermore, since the *11126 Baltimore Boulevard, Inc.* decision, the Maryland Rules relied upon by that court in coming up with its 93 day figure have not changed. As stated above, however, the ordinance in this case allows for adult bookstores to operate throughout the appellate process. *See 11126 Baltimore Boulevard, Inc.*, 58 F.3d at 1001 n. 18 (stating that "the County could avoid the constitutional problem engendered by its present scheme by permitting adult bookstores to operate until a judicial determination is rendered. . . ."). Thus, the licensing provision contained in Bill 65 does not present the risk of suppressing protected speech during the judicial review process that the second *Freedman* procedural safeguard was intended to protect against.

We note that appellant raised no challenge to the Howard County ordinance on the basis of the third *Freedman* requirement, and therefore, we need not address its application. *See 11126 Baltimore Boulevard, Inc.*, 58 F.3d at 996 n. 12 (citations omitted).[8]

---

8. It is not entirely clear whether the third *Freedman* requirement applies when undertaking a prior restraint analysis of a licensing scheme for sexually oriented businesses. In discussing the three *Freedman* requirements, the Fourth Circuit in *11126 Baltimore Boulevard, Inc.* stated:

In FW/PBS, three members of the Court concluded that the third *Freedman* requirement—that the censor bear both the burden of initiating judicial action and the burden of proof in the judicial proceeding—should not apply to the licensing scheme under review. Justice O'Connor, joined by Justices Stevens and Kennedy, reasoned that this requirement was unnecessary to adequately protect freedom of expression because the ordinance was content neutral—and therefore not presumptively invalid—and because the applicant for a business license had a great incentive to pursue a. judicial determination. Justices Brennan, Marshall, and Blackmun concurred in the judgment, opining that each of the three *Freedman* procedural safeguards were applicable in analyzing the constitutionality of the Dallas licensing scheme. Chief Justice Rehnquist and Justice White would have held that because the licensing scheme was a content neutral time, place, and manner restriction, prior restraint analysis need not be applied. Justice Scalia dissented on other grounds. The splintered opinion of the FW/PBS Court leaves the continued application of the third *Freedman* factor subject to some speculation.

58 F.3d at 996 n. 12.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**