Wilbur W. COCHRAN, d/b/a Now Playing Video and Gift Shop, Plaintiff,

v.

TOWN OF MARCY, NEW YORK, Defendant.

No. 01–CV–364.

United States District Court, N.D. New York.

May 31, 2001.

Law Office of David Brickman, Albany, NY, David Brickman, of counsel, for plaintiff.

Gorman, Waszkiewicz, Gorman and Schmitt, Utica, NY, William P. Schmitt, of counsel, for Defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On March 14, 2001, plaintiff William W. Cochran, d/b/a Now Playing Video and Gifts ("Cochran" or "plaintiff") commenced the instant action against defendant Town of Marcy, New York ("the Town" or "defendant") pursuant to 42 U.S.C. § 1983. Defendant answered the complaint on April 17, 2001, and asserted six affirmative defenses.

Plaintiff now moves for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65. Defendant opposes. Oral argument was heard on May 11, 2001,

in Utica, New York. Decision was reserved.

## II. FACTS

This action arises from the adoption and enforcement by defendant of a zoning ordinance applicable to "adult uses."[1] The following are the undisputed facts in this case, and where disputed, the facts as alleged by each party.

In July 1996, Cochran opened a video and gift shop, called "Now Playing Video and Gifts," in the Town, selling adult and nonadult products. He has invested considerable capital in the development of his business. From its inception, this business has apparently operated with little or no effect upon the surrounding properties, and the record is devoid of evidence that plaintiff's business has produced any of the deleterious "secondary effects" sometimes associated with adult uses.

In 1997, the Town's zoning board adopted Local Law No. 5 of 1997 ("Local Law No. 5") as an amendment to its Zoning Law. Local Law No. 5 restricts the locations at which adult businesses may operate. Local Law No. 5 prohibits adult businesses from operating within 1500 feet of a residential area or any "school, nursery school, day care center, educational institution, house of worship, park or playground, historic or scenic resource, and civic or cultural facility." (Cochran Aff., Exh. E) In addition, no adult business may be located within 1500 feet of another adult use. (Id.)

As the factual basis for adopting Local Law No. 5, the Town established a committee which (1) reviewed the experience of other municipalities with adult uses; (2) interviewed the police chief of a neighbor-

---

**1.** Local Law No. 5 defines an adult use as, *inter alia,* "an establishment which has a substantial or significant portion of its stock in trade, books, pamphlets, magazines and other periodicals, sculptures, photographs, pictures, slides, videotapes, films or sound recordings and which establishment excludes any minor by reason of age." (Cochran Aff., Exh. E.)

ing community; (3) received a letter from a local real estate broker regarding the effect of adult businesses on property values; and (4) conducted a public hearing at which comment from the community was received.[2] The conclusion of the Town was that adult uses produce undesirable "secondary effects," and that the ordinance was justified "to promote the health, safety, morals and general welfare of the citizens of the Town and to prevent the deleterious location and concentration of adult-oriented businesses within the Town."

Cochran contends that as a result of the adoption of Local Law No. 5, he has been effectively zoned out of business within the Town. He argues that as a result of the application of the ordinance's 1500 foot buffer zones, there is no location within the Town to which he can relocate his business. The Town contests this allegation, and offers an exhibit purporting to demonstrate that there are three streets within the Town that are more than 1500 feet from residential areas. In addition, plaintiff's expert, R. Bruce McLauglin, indicates that when read in conjunction with the remainder of the Town's zoning ordinance, Town officials are bestowed with considerable discretion to grant or withhold approval of adult uses which otherwise comply with the requirements of Local Law No. 5. (Cochran Aff., Exh. G.)

In any event, following the adoption of Local Law No. 5, Town of Marcy Building Inspector/Codes Enforcement Officer George Russell ("Russell"), issued an Order To Remedy Violation to plaintiff on February 29, 2000, for noncompliance with the zoning law. On April 4, 2000, plaintiff appealed this order to the Town Zoning Board of Appeals. Plaintiff did not appear at the appeal hearing, and following receipt of testimony, the order was affirmed on June 5, 2000. The following day, plaintiff was charged with criminal violation of Local Law No. 5, and following a hearing in January 2001, was ordered to pay a $500 fine. To date, plaintiff has continued to operate his business.

## III. STANDARD OF REVIEW

### A. Preliminary Injunction

In order to grant a preliminary injunction, a court must find (1) that the plaintiff is at risk of imminent irreparable harm; and (2) that the plaintiff has demonstrated a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir.2000). When the party seeks an injunction to protect or regain a constitutional right, however, courts generally do not require a showing of irreparable harm. *See, e.g., Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991) (when deprivation of rights derives from allegations of a First Amendment violation, irreparable harm presumptively exists).

## IV. DISCUSSION

Cochran contends that he is entitled to a preliminary injunction because (a) Local Law No. 5 impermissibly interferes with the exercise of his First Amendment rights; and (b) there is a likelihood that he will succeed on the merits. Because it

---

**2.** It is worthy of note that the public comment on Local Law No. 5 was apparently limited to the comments of the owner of a neighboring property, Ron Schoen, who commented that the materials sold by plaintiff were "shocking and unbelievable," and that he believed a six-foot high fence should be erected between his property and plaintiff's business to prevent foot traffic through his property. (Caldwell Aff., Exh. A.)

appears that the effect of Local Law No. 5 is to effectively zone all adult businesses out of the Town, plaintiff is entitled to such an injunction.

■ In order to survive scrutiny under both the federal and state Constitutions, Local Law No. 5 must: (1) be "content neutral," in the sense that it is aimed not at the restricted speech itself, but at the negative secondary consequences that flow from it; (2) serve substantial government interests and be no broader than necessary to serve these interests; and (3) leave open reasonable alternative avenues of communication. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49–50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Stringfellow's of New York, Ltd. v. City of New York*, 91 N.Y.2d 382, 396–97, 671 N.Y.S.2d 406, 694 N.E.2d 407 (1998). If Local Law No. 5 is addressed to the content of protected speech rather than its secondary effects, then it is presumptively invalid. *See Carey v. Brown*, 447 U.S. 455, 462–463, and n. 7, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

The parties' arguments concerning the validity of Local Law No. 5 have focused primarily on the availability of alternative locations for plaintiff's business within Marcy, and their respective positions are discussed below. The sufficiency of the Town's purported factual basis for adoption of the law is also discussed.

### A. Alternative Channels

■ Even assuming that Local Law No. 5 is properly addressed to the perceived secondary effects of adult uses within the Town, the injunction must issue in this case. The most significant problems with Local Law No. 5 relate to the availability

of alternative channels of expression provided to adult uses under the ordinance. While the Town argues that there are several locations from which an adult business could operate under the ordinance, the evidence does not support this argument.

As evidence of the availability of alternative channels, the Town proffers the affidavit of its Building Inspector/Codes Enforcement Officer Russell. He flatly alleges that alternative locations exist, and makes reference to an exhibit attached to his affidavit. The exhibit simply contains a map of the town with a highlighted orange line indicating the 1500 foot mark from residential areas, and three streets highlighted in green purporting to represent locations within the Town at which adult uses are permitted. This showing is insufficient. There is no indication whether the locations identified by Russell are within 1500 feet from the other types of uses identified in the ordinance.[3] At the least, substantial questions remain as to whether any locations exist within the Town to which plaintiff's business could legally relocate.

In support of his position, plaintiff submits the report of a local real estate agent, Fred Macchia, and an expert on land use, R. Bruce McLaughlin, to demonstrate that there are no locations within the Town currently available to which plaintiff can relocate his business. Based on this evidence, it appears that plaintiff has made a sufficient showing that, if the ordinance is not enjoined, he will be denied adequate alternative channels for his protected activities and will be forced out of business within the Town. Accordingly, plaintiff's motion for preliminary injunction must be granted.

---

**3.** Although not addressed or answered in the motion papers or at oral argument, it does appear as if all of these locations may be within 1500 feet of the park along the Erie Canal.

## B. *Secondary Effects*

Though not necessary to the holding on this motion, there are issues regarding the defendant's assertion that Local Law No. 5 is addressed to the secondary effects of adult uses which merit discussion. Defendant argues that Local Law No. 5 was adopted to address the secondary effects of adult uses, rather than to prohibit such uses because of the protected content of the speech implicated by such uses. In support of this argument, defendant points to the "fact-finding" conducted by the Town's Zoning Board—*i.e.*, the public hearing, the consideration of the experiences of other municipalities with adult businesses, and the comments of the Village of Yorkville Police Chief. Defendant does not dispute that the "fact-finding" did not focus on the existence of pernicious "secondary effects" from adult uses within the Town. Nor did defendant allege any specific "secondary effects" from the plaintiff's business (which had been in existence for a year prior to adoption of the ordinance). Instead, the Town asserts that such findings are not essential to the validity of Local Law No. 5.

Defendant argues that its fact-finding was sufficient to justify the ordinance because "the [Supreme] Court has not required that a municipality conduct new studies or produce evidence independent of that generated by other cities or towns, so long as whatever evidence the municipality relied upon is reasonably believed to be relevant to the problem sought to be addressed." (Def. Mem. at 9) (citing *City of Renton v. Playtime Theatres*, 475 U.S. at 49–50, 106 S.Ct. 925; *O'Malley v. City of Syracuse*, 813 F.Supp. 133 (N.D.N.Y. 1993)).

In opposition, plaintiff offers the affidavit of expert Bruce McLaughlin, who indicates that he is currently studying whether Local Law No. 5 is addressed to the perceived secondary effects of adult uses. While plaintiff offers no argument on this issue, and indeed offers little of any merit on *any* issue in this case,[4] it does appear that the sufficiency of defendant's fact-finding is subject to dispute in this case. While it is true that, as defendant argues, it is not necessary that a municipality conduct its own research prior to adopting regulation to address the secondary effects of adult uses, it would seem that there must at a minimum be some evidence that the regulation is, in fact, directed to address such effects. This is particularly true where, as here, the business has operated in the same location for a considerable period of time without the occurrence of any such deleterious effects.

■■■ It is undisputed that non-obscene adult entertainment is entitled to the protection of the First Amendment. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,

---

**4.** Plaintiff's attorney has submitted a "memorandum of law" in support of this motion which is largely a collection of string cites, typographical errors, and gibberish. Furthermore, it is not the first time that plaintiff's attorney has submitted such shoddy and incompetent work. For example, in the case of *Malatesta v. New York State Division of State Police*, 120 F.Supp.2d 235, 239 n. 5 (N.D.N.Y. 2000), it was observed that, "It is difficult for the Court to determine the exact contours of plaintiff's arguments in this case, because plaintiff has apparently submitted her brief from the prior state court suppression hearing (with minimal modification) as her opposition to the instant motion." In the instant case, plaintiff's attorney has urged a finding that the "Amusement Ordinance of the City Code fails to meet the procedural requirements of Freedman, supra [sic] as the ordinance contains a prior restraint against adult uses and no license can even issue to any adult use establishment within the Town that offers as a substantial portion of its stock in trade adult material." At the risk of appearing pedantic, it is noted that the instant case involves neither an "Amusement Ordinance," a "City Code," nor the issuance of a "license."

224, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). As such, it should not be the rule that this protection evaporates at the mere invocation of the words "secondary effects." Notwithstanding the pronouncements of some courts in this Circuit, *see T & A's, Inc. v. Town Board of the Town of Ramapo,* 109 F.Supp.2d 161, 171 (S.D.N.Y.2000) ("The negative secondary effects adult businesses are, at this point in time, well documented phenomena."), it simply cannot be said that such effects are universal or inevitable products of the sale of adult materials, and that any ordinance which invokes this rationale is thereby immunized from constitutional challenge. There must, in fact, be some connection between the stated objective of an ordinance addressed to the "secondary effects" of adult-oriented speech and the actual or perceived risk of such effects. *See Stringfellow's v. City of New York,* 91 N.Y.2d 382, 396, 671 N.Y.S.2d 406, 694 N.E.2d 407 (1998) (to survive scrutiny, ordinance must be "narrowly tailored to affect only those uses *shown to produce the unwanted secondary effects.*" (Emphasis added.)) Therefore, regardless of whether or not the Town actually studied its own experiences regarding the secondary effects of adult uses, it should be required to demonstrate a connection between Local Law No. 5 and the existence or threat of such effects in the instant case. However, because this motion is decided on the issue of alternative channels, it is not now decided whether defendant has demonstrated that Local Law No. 5 is, in fact, directed at the secondary effects of adult uses, rather than at their protected content.

## V. CONCLUSION

The plaintiff has, at the least, demonstrated a serious question going to the merits and the balance of hardship tipping decidedly toward him. Unless a preliminary injunction is issued, plaintiff may eas-ily be forced out of business. The Town has not demonstrated any hardship if the ordinance is not enforced against the plaintiff. The plaintiff's business has been located in the Town for almost five years with no showing of any actual adverse "secondary effects" in crime, misconduct, lower property values, etc. In the interest of justice, the status quo should remain in place pending resolution of the issues at trial.

Therefore, it is hereby

ORDERED that

1. Plaintiff's motion for a preliminary injunction is GRANTED; and

2. The defendant and its employees and agents are enjoined from enforcing Local Law No. 5 of 1997 as against the plaintiff.

IT IS SO ORDERED.