UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALLNO ENTERPRISES, INCORPORATED,
         *Plaintiff-Appellant,*

         v.

BALTIMORE COUNTY, MARYLAND,
         *Defendant-Appellee.*

No. 00-1921

LOVE ONES LINGERIE & GIFT SHOP,
INCORPORATED,
         *Plaintiff-Appellant,*

         v.

BALTIMORE COUNTY, MARYLAND,
         *Defendant-Appellee.*

No. 00-1922

SOUTHWEST ENTERPRISES,
INCORPORATED, d/b/a Southwest
Video,
         *Plaintiff-Appellant,*

         v.

BALTIMORE COUNTY, MARYLAND,
         *Defendant-Appellee.*

No. 00-1923

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-1249-S, CA-99-1498-S, CA-99-1496-S)

Argued: April 4, 2001

Decided: June 1, 2001

Before WIDENER and NIEMEYER, Circuit Judges, and Lacy H. THORNBURG, United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Howard J. Schulman, SCHULMAN & KAUFMAN, L.L.C., Baltimore, Maryland, for Appellants. John Edward Beverungen, OFFICE OF LAW, Towson, Maryland, for Appellee. **ON BRIEF:** Virginia W. Barnhart, County Attorney, Amanda Stakem Conn, OFFICE OF LAW, Towson, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Allno Enterprises, Inc., et al., ("Allno") petitions this court to review the lower court's grant of summary judgment to Baltimore County, Maryland ("Baltimore County" or "the County").

### I.  *BACKGROUND*

Baltimore County enacted its Adult Entertainment Business Law ("the Ordinance") in February 1998. The Ordinance applies to adult stores, adult movie theaters, massage establishments, and tattoo or body piercing establishments ("adult business"). "Adult stores," as the term is defined in the ordinance, includes any business which devotes

20 percent or more of its stock or floor space to adult products. The Ordinance restricts the location of adult businesses to manufacturing, heavy ("MH") zones, and further provides that adult businesses may not be located within 1,000 feet of any residence, church, school, park, library, or child care establishment. In addition, the Ordinance provides that an adult business may not be located within 2,500 feet of another adult business. However, the Ordinance permits businesses which devote less than 20 percent of their stock or floor space to adult products to operate throughout the county; thus, as the County stated during oral argument, a business which generates 100 percent of its sales from adult products, but devotes less than 20 percent of its stock or floor space to such products, is free to remain in its present location outside the MH zone.

Allno is an adult business which was operating before the Ordinance was enacted. Collectively, Appellants operate three such adult businesses within Baltimore County. Each of the adult businesses is located outside the MH zone, and each had greater than 20 percent of their inventory devoted to adult products prior to the enactment of the Ordinance. Since the Ordinance was enacted, Allno has been cited by the County for violating the Ordinance; to wit, Allno was cited for having in excess of 20 percent of their stock or floor space devoted to adult products. In response to the citation, Allno has reduced their stock and/or floor space devoted to adult products to comply with the Ordinance. Allno has not attempted to relocate to the MH zone in order to operate a "100%" adult business.

Allno brought an as-applied challenge to the Ordinance. Though it concedes Baltimore County's important interest in addressing the secondary effects of adult entertainment, *see, e.g., Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), Allno objects to the manner by which Baltimore County chose to address the problem. Specifically, Allno asserts that the Ordinance fails to provide reasonable alternative avenues of communication. *See Renton*, 475 U.S. at 54; *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 147 (4th Cir. 1991). In addition, Allno challenges the constitutionality of that portion of the Ordinance which provides for warrantless searches of adult businesses by Baltimore County inspectors.

We are asked to review the district court's grant of summary judgment to Baltimore County on each of these issues, and the court's refusal to order formal discovery. Though we do not travel the path taken by the district court below, we reach the same conclusions and, therefore, affirm.[1]

## II. *STANDARD OF REVIEW*

We review a district court's grant of summary judgment *de novo*. *See Jakubiak v. Perry*, 101 F.3d 23, 26 (4th Cir. 1996). Summary judgment should only be granted if a party's submissions to the court "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoted in *United States v. Leak*, 123 F.3d 787, 794 (4th Cir. 1997)). In evaluating the evidence, the court must construe "the facts and inferences in the light most favorable to the non-moving party." *Id*.

## III. *DISCUSSION*

### A. *Reasonable Alternative Avenues of Communication*

Although neither party has raised the question of standing on appeal, "we are required to address the issue. . . . The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). To establish standing, a plaintiff must meet three requirements; "[f]irst, he must demonstrate 'injury in fact' — a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical';" "[s]econd, he must establish causation — a 'fairly . . . trace[able]' connection

---

[1]"[W]e may affirm a grant of summary judgment on any ground adequately supported by the record[.]" *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 685 (10th Cir. 1998); *Brown v. Trans World Airlines*, 127 F.3d 337, 342 (4th Cir. 1997) (same).

between the alleged injury in fact and the alleged conduct of the defendant[;]" "[a]nd third, he must demonstrate redressability — a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Natural Resources v. United States*, 120 S. Ct. 1858, 1861-62 (2000) (citations omitted).

Here, Allno alleges, and Baltimore County does not contest, that they have been cited by the County for violating the 20 percent limit on adult stock in stores not located in the MH zone. Thus, Allno has satisfied the first prong of the standing requirement. The citation, of course, is "caused" by the Ordinance's limit on the sale of adult materials within those portions of the County which are not zoned MH; thus causation has been established. Similarly, it is clear that if we found the Ordinance unconstitutional, Allno would be free to peddle its wares *ad infinitum* outside the MH zone without fear of citation from the city; the redressability requirement is met. Hence, Allno has established its standing to challenge the Ordinance.

We turn now to the gravamen of the appeal. In evaluating the impact of an ordinance on the avenues of communication available to an adult business, the courts have taken two approaches. Some courts have focused on the acreage available to adult businesses as a proportion of the total acreage within the locality, while others have considered the number of sites in proportion to the number of adult businesses in operation within a locality. *See Diamond v. City of Taft*, 215 F.3d 1052, 1056-57 (9th Cir. 2000), *cert. denied*, 121 S. Ct. 763 (2001). Because we agree with the Seventh Circuit that "[t]he constitution does not mandate that any minimum percentage of land be made available for certain types of speech[,]" we will not address Allno's contention that the Ordinance sets aside only .16 percent of the total acres in the County. *See North Ave. Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 445 (7th Cir. 1996). Rather, we will focus our review on whether the Ordinance allows Allno an adequate number of sites to which it can relocate if it so chooses. As Allno is mounting an as-applied challenge to the Ordinance, we need determine only whether there are an adequate number of available sites to satisfy the the three adult business-Appellants' potential need to relocate.

Determining the number of sites which are "available" after the enactment of the Ordinance is the core of this dispute. Local govern-

ments are not required to ensure that adult businesses obtain sites at bargain prices; rather, these businesses must fend for themselves, like any other business, in the real estate market. *Renton*, 475 U.S. at 54; *D.G. Restaurant*, 953 F.2d at 147. In deciding whether a site is available, our sister Circuits have considered a number of factors. For instance, they have refused to count the site if the land has physical characteristics which render it unavailable for any kind of development, *see Woodall v. City of El Paso*, 49 F.3d 1120, 1124 (5th Cir. 1995), or if the site could not reasonably be expected ever to become available for any commercial enterprise. *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1532 (9th Cir. 1993). Other considerations include "the accessibility to the general public, the surrounding infrastructure, . . . [and whether] the sites are suitable for some generic commercial enterprise." *Hickerson v. City of New York*, 146 F.3d 99, 106 (2nd Cir. 1998), *cert. denied*, 525 U.S. 1067 (1999) (internal quotations and citation omitted).

As the Eleventh Circuit observed, "[t]he ideal lot is often not to be found." *David Vincent, Inc. v. Broward County, Fla.*, 200 F.3d 1325, 1334 (11th Cir. 2000).

> [T]he fact that some development is required before a site can accommodate an adult business does not mean that the land is, *per se*, unavailable for First Amendment purposes. . . . Examples of impediments to the relocation of an adult business that may not be of constitutional magnitude include having to build a new facility instead of moving into an existing building; having to clean up waste or landscape a site; bearing the costs of generally applicable lighting, parking, or green space requirements; making due with less space than one desired; or having to purchase a larger lot than one needs.

*Id.* at 1334-35.

Turning to the case now before us, we do not hesitate to conclude that there exists an adequate number of sites to which Allno can relocate, and, hence, adequate alternative avenues of communication. In defending the constitutionality of the Ordinance, the County submitted a listing ("Costar listing") of available properties within the MH

zone to which Allno could relocate. *Cf. Hickerson*, 146 F.3d at 107 ("[W]e are aware of no federal case, and plaintiffs direct our attention to none, that requires municipalities to identify the exact locations to which adult establishments may relocate, as opposed to identifying the general areas that remain available and proving that such areas contain enough potential relocation sites that are 'physically and legally available' to accommodate the adult establishments."). Allno asserts that none of the properties are available because an owner of any one of these properties would want to lease it to an industrial, rather than commercial, user. We disagree. A property is not rendered "unavailable" by the bald and unsupported conclusions of an adult business. While the properties identified by the County in the Costar listings are generally large warehouses, seven properties explicitly permit interested parties to divide the space offered.[2] Thus, while Allno may have to purchase a larger portion of the building even after division than what they would consider ideal, the properties are nonetheless available. *See Hickerson*, 146 F.3d at 108 ("industrial areas, undeveloped land, and warehouse areas" are not unavailable under *Renton*).

In addition to the seven available properties identified in the Costar listing, Allno itself identified an available property known as parcel number 1224, bringing the total to eight available properties. Continuing our review of Allno's assessment of properties in the MH zone, we identify three additional available sites. The first two of these sites ("Quad Avenue sites") were excluded by Allno because they are open lots which would have to be developed, and because, by virtue of their proximity to the highway and the Port of Baltimore, they would be especially attractive to large industrial users. Simply because a particular property is well suited for other commercial or industrial uses does not render it unavailable. Indeed, the qualities which make these sites attractive as industrial sites, to wit, the ability to build-to-suit and

---

[2]For purposes of this appeal only, we will assume *arguendo* that large warehouses which cannot be divided to create smaller properties are not part of the general commercial real estate market. *Compare Hickerson*, 146 F.3d at 108 (warehouses are not "unavailable" under *Renton*), *with Topanga Press, Inc.*, 989 F.2d at 1531 ("it is not reasonable to define [a warehouse] as part of the real estate market that any business would choose.").

their proximity to highways, thus facilitating public access, make these sites especially well suited for the location of a generic commercial establishment.

Finally, Allno improperly excluded the Williams Trust land. Allno declared the Williams Trust land unavailable because "it would be highly unlikely for the land owner to pursue" leasing a portion of the land to a small retail business. Conjecture and speculation about a land owners' proclivity to lease a parcel of land to an adult business is not sufficient to render it unavailable. *Cf. Lim v. City of Long Beach*, 217 F.3d 1050, 1055 (9th Cir. 2000) (once a locality has demonstrated the facial availability of a list of properties, "it is for Plaintiffs to show that, in fact, certain sites would not reasonably become available."). The Williams Trust land is undeveloped with access to roads; while Allno may have to subdivide it, we see no reason to exclude it from the list of available properties within the MH zone.

Adding to the seven available properties identified in the Costar listing parcel number 1224, the two Quad Avenue sites, and the Williams Trust land, we conclude that there are at least eleven available sites. As such, it is clear that the three adult business-Appellants here have more than adequate alternative avenues of communication.

## B.  *Discovery*

Allno claims that the district court abused its discretion in denying them formal discovery. We disagree. First, discovery was not totally foreclosed. The district court ordered the parties to cooperate with each other in conducting informal discovery, and the record indicates that both parties complied. Dissatisfied with this informal discovery, Allno asked the court to order the disclosure of (1) the names of businesses to which the County had issued citations for violating the adult business zoning law, and (2) the names of businesses known to the County that would be covered by the zoning ordinance. With respect to the names of the adult businesses, in addition to the County's uncontroverted claim that it did not have such information, the record shows that Allno was fully able to collect such information on its own. With respect to the names of businesses which had been cited, we do not think that this information was material to Allno's as-applied challenge. Allno never sought or claimed to be challenging

the Ordinance on behalf of all of the adult businesses in the county. Rather, Allno challenged the application of the Ordinance on the grounds that it adversely impacted *them*. Thus, the identity of other businesses cited by the County for violating the Ordinance is irrelevant.

The district court did not abuse its discretion in denying formal discovery in this case.

## C. *Administrative Inspections*

Allno asserts that the provisions of the Ordinance permitting warrantless administrative searches of adult businesses within normal business hours violates their Fourth Amendment rights. We disagree.

A broad administrative search of a business will not violate the Fourth Amendment when: (1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection is necessary to further the regulatory scheme; and (3) the "statute's inspection program, in terms of the certainty and regularity of its application, [ ] provide[s] a constitutionally adequate substitute for a warrant." *New York v. Burger*, 482 U.S. 691, 703 (1987). Allno does not contest that the County possesses a significant interest in regulating businesses which sell adult products. *See, e.g., D.G. Restaurants*, 953 F.2d at 144-46; *Hickerson*, 146 F.3d at 104-06. And inspection of these businesses is necessary to regulate and enforce the 20 percent limit on adult products displayed or stocked by businesses located outside the MH zone. Finally, the Ordinance, by its very terms, puts the businesses on notice that the County may, from time to time, inspect their facilities to ensure compliance with the 20 percent limit. Thus, all of the *Burger* requirements are satisfied.

Of course, with respect to adult businesses located within the MH zone, the County has not demonstrated a substantial government interest in conducting inspections of their merchandise, for these businesses may devote their entire floor space and stock to adult products. Similarly, the setback requirements to which these businesses are subject may be verified simply by observing their location on a map. However, we need not decide the constitutionality of the warrantless

search provision of the Ordinance as it applies to businesses located within the MH zone, for Allno lacks standing to make such a challenge. *Cf. Lawline v. American Bar Ass'n.*, 956 F.2d 1378, 1386 (7th Cir. 1992) (as-applied challenge is improper when a law has not yet been applied to the plaintiffs). This is so because Appellants do not operate an adult business within the MH zone. While a plaintiff need not wait to be inspected to challenge the Ordinance, there must at least be a credible threat of inspection. *Cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) (to establish standing, a plaintiff must be able to show, at a minimum, an intention to engage in conduct and that there is a credible threat of prosecution); *American Charities v. Pinellas County*, 221 F.3d 1211 (11th Cir. 2000) (same). Obviously, Allno cannot claim a threat of inspection when it is not even located in the area to be inspected.

Therefore we affirm the grant of summary judgment in favor of the County with respect to the constitutionality of the administrative searches with respect only to adult businesses located outside the MH zone. We expressly do not decide the constitutionality of executing administrative searches, pursuant to the Ordinance, of adult businesses located within the MH zone.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.