**MJ ENTERTAINMENT ENTERRISES, INC. d/b/a the Starlight Plaintiff,**

**v.**

**THE CITY OF MOUNT VERNON, New York, a Municipal Corporation; Soraya Ben–Habib, as First Deputy Commissioner of the Department of Buildings of the City of Mount Vernon, New York, Defendants.**

No. 02 CIV. 6367(CM).

United States District Court, S.D. New York.

Aug. 4, 2004.

Daniel A. Silver, Law Office of Daniel A. Silver, New Britain, CT, for Plaintiff.

Edward J. Phillips, Keane & Bean, P.C., White Plains, NY, Ilamm M. Maazel, Emery Celli Cuti Brinckerhoff & Abady, P.C., New York, NY, for Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff M.J. Entertainment Enterprises wants to transform a now defunct bar, The Starlight, into an adult entertainment venue. However, under the Mount Vernon zoning laws, he cannot operate an adult entertainment business on that site. Plaintiff has therefore brought this suit challenging the constitutionality of the ordinance on the ground that it violates the First Amendment. Plaintiff alleges that the zoning ordinance limits the location of

adult entertainment establishments to such a small area that Mount Vernon has effectively denied such establishments a reasonable opportunity to operate in the city.

The parties have stipulated to the relevant facts and have cross-moved for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

FACTS

The following facts are undisputed.

Mount Vernon is a small, densely populated residential city on the north border of the Bronx. It has a population of 68,381 people and a land area of only 4.36 miles. It is filled with churches, parks, community centers and schools. Residential zones comprise 87% of the land within Mount Vernon. Only 13% of the City's land area—which, by the court's math, is slightly over one-half acre—is zoned for commercial and industrial uses. (Post Decl. ¶ 2.)

Historically, there has been little demand for adult entertainment in Mount Vernon. Between 1963 and 1999—a period when adult businesses were not subject to zoning restrictions—only two adult entertainment businesses operated in Mt. Vernon: Sue's Rendezvous and Mr. G's. (Def. Rule 56.1, ¶ 23.) Mr. G's was closed in 2000 due to multiple legal violations and criminal activity on the premises, including drug use and prostitution. Sue's Rendezvous, however, remains in business, and has been grandfathered in to the zoning code. Since 1999, no one has attempted to open, or even inquired about opening, a new adult entertainment establishment in Mount Vernon. (Id. ¶ 31.)

In 1998, Mount Vernon conducted a nine-month study of the secondary effects of adult entertainment establishments on the quality of life in Mount Vernon ("the study"). The study showed that adult entertainment businesses had highly negative secondary effects, including increased crime rates (particularly sex crimes) and the depreciation of property values. (Post Decl. Ex. B, 3–5.) In fact, between January 1998 and August 2003, there were 574 incidents requiring police attention at Sue's Rendezvous, including 30 fights, 4 grand larcenies, 5 narcotics investigations, a bomb threat and numerous shots fired, robberies, assaults and disorderly conduct. (Def. Rule 56.1, ¶ 25.) Not surprisingly, the study also showed that Sue's Rendezvous and Mr. G's required more police attention than comparable, non-adult entertainment bars in the same neighborhood during the same hours. (Id. ¶ 26; Post Decl. Ex. B, 5.)

In an effort to limit the negative secondary effects associated with the adult entertainment businesses, Mount Vernon passed a zoning ordinance in 1999 that delineated where adult businesses could operate. The ordinance was adopted in order to, inter alia, "guide the future growth and development of the city in accordance with a well-balanced and comprehensive plan" (§ 267–1A), "conserve the value of buildings and enhance the value of land throughout the city" (§ 267–1F), and "protect the character and social and economic stability and to encourage the orderly and beneficial development of the city and all of its neighborhoods" (§ 267–1H). To that end, section 267–18F(3)(m) of the Mount Vernon Zoning Code allows "adult entertainment businesses" to be located only in a District I Industry Zone. Under § 267–28I, an adult entertainment businesses may be established by special permit[1], provided, among

---

**1.** In Count Two of the complaint, plaintiff charged that the permit requirement also violated the First Amendment. This claim was dismissed because plaintiff lacked standing. Arguments implying the invalidity of the per-

other things, (1) that a buffer zone of 500 feet is maintained between the business and the property line of any residential districts, parks, schools, places of worship, day-care centers or museums, and (2) that no other adult businesses is located within 1000 feet. § 267–281(7), (9).

*Plaintiff's Business*

M.J. Entertainment is fifty-percent owned by Joseph DeFreitas, who has been pursuing this suit. The company owns a bar called The Starlight, which sits on a 1,800 square foot lot on East Third Street in Mount Vernon. By plaintiff's own admission, the business has not been a success. The bar was open sporadically, rather than on fixed days of the week, and has generally been a "money losing proposition." (DeFreitas Dep. 31–33.) In June 2003, a shooting occurred outside The Starlight, and, after a fire inspector found eight code violations, the bar was closed. (Post Decl., Ex. D.) Plaintiff now wants to re-open the bar with topless, exotic dancers providing entertainment. Under the Mount Vernon Zoning Code, such entertainment would be classified as "adult entertainment" and the business would therefore be subject to the requirements of § 267.

Plaintiff's business is not in a District I Industrial zone. It is located in a commercial zoning district downtown that allows for bars and nightclubs with live entertainment. However, because the bar is located within 500 feet of residences, no special

permit authorizing the use can issue. In the event that plaintiff cannot use its current business premises, DeFreitas says the company wants to find an alternative location within the City where adult entertainment is permitted. As discussed in the November 21, 2002 opinion, plaintiff has not sought a permit from the city, and it does not appear that plaintiff has actually sought alternative locations. (*M.J. Entertainment v. Mount Vernon,* 234 F.Supp.2d 306 (S.D.N.Y.2002); DeFreitas Dep. 104–105.)

Although plaintiff has charged that the zoning code does not allow sufficient alternative avenues of communication for those seeking to provide adult entertainment, defendants' expert, Richard Bass, concluded there are at least four alternative locations where plaintiff could operate an adult entertainment business. After reviewing the ordinance and analyzing the property found within the appropriate Industrial Zone (331 tax lots in all), Bass was able to identify four separate lots on which, from both a zoning and commercial perspective, plaintiff could site an adult entertainment business. The four lots, 7, 29, 41, and 49 Edison Road, provide a total of 102,500 square feet of space in which plaintiff could operate a business while conforming with all of the zoning requirements. Plaintiff does not contest this conclusion.[2]

Combined, the four lots constitute 0.084% of the total land area of Mount Vernon, or .67% of the total land area available for commercial use.[3] However,

---

mit requirement will not be considered on this motion.

2. Plaintiff initially intended to submit its own expert testimony, but later withdrew its expert and stipulated that it would not contest the facts outlined in the Bass report. (Maazel Decl., Ex. A.)

3. Plaintiff has asserted that only .04% of the total land area is available for development as adult entertainment businesses. Plaintiff

reached this figure by converting 4.36 square miles to acres and then dividing the *average* size of the four lots (in acres) into this figure. However, the proper calculation is not based on the average size of the lots but on the actual space available. Plaintiff has stipulated to the accuracy of the Bass report that indicates 102,500 square feet are available. 102,500 square feet is 0.84% of Mount Vernon's land (4.36 sq. mi. × 5,280 ft. × 5,280 ft. = 121,549,824 sq. feet.)

because the zoning ordinance requires that adult entertainment businesses be located at least 1000 feet apart, locating a single adult establishment on any one of these lots would preclude another adult business from opening on any of the other three lots.

DISCUSSION

*Standard for Summary Judgment*

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties have stipulated to the relevant facts and agree that the issue is ripe for summary judgment.

*First Amendment Principles*

Zoning ordinances intended to combat the undesirable secondary effects of adult entertainment businesses are to be reviewed under the standards applicable to regulations that regulate time and place in a content-neutral manner. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 754 (2d Cir.1998.) The Mount Vernon ordinance is unquestionably a content-neutral, time, place and manner restriction enacted in response to the community's concern for the negative effects associated with adult entertainment businesses. Thus, the proper inquiry in this case is whether the Mount Vernon ordinance is "designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Id.* at 50, 106 S.Ct. 925; *Hickerson v. New York*, 146 F.3d 99 (2d Cir.1998). The parties agree that the ordinance is designed to serve a substantial governmental interest, and assert that the only issue is whether the ordinance leaves open sufficient alternative avenues of communication. (Pl. Reply Mem., 5; Def. Mem., 10.)

A determination of whether reasonable alternative avenues of communication exist depends on the "physical and legal availability of alternative sites within the municipality's borders and whether those sites are part of an actual business real estate market." *Hickerson*, 146 F.3d at 104 (quoting *Stringfellow's of New York, Ltd. v. City of New York*, 91 N.Y.2d 382, 402, 671 N.Y.S.2d 406, 694 N.E.2d 407, 417 (1998)). The First Amendment requires "only" that Mount Vernon "refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." *Renton*, 475 U.S. at 54, 106 S.Ct. 925. Federal courts, therefore, have found that reasonable alternative avenues of communication exist if there is sufficient land area, in all stages of development, open for use by adult businesses. *Id.* at 106.

*Plaintiffs' First Amendment Rights Have Not Been Violated Because Sufficient Alternative Avenues of Communication Exist*

The parties agree that there are four sites in Mount Vernon that are currently available for the operation of an adult entertainment business. Each is just a few minutes drive from the center of Mount Vernon. Each of the sites could be rented or bought. The sites are already in use but existing structures could be redeveloped or a lot could be subdivided and a portion redeveloped. (Bass Rpt. 3.) Plaintiff halfheartedly suggests that because the sites would have to be acquired or leased, and even subdivided, they are not actually "available." This claim is without merit. The fact that other businesses may already occupy the sites, or additional work must be done before the sites would be suitable for adult entertainment, is ir-

relevant to the determination of whether the sites are "available" under *Renton.* *See Renton,* 475 U.S. at 53, 106 S.Ct. 925; *Hickerson,* 146 F.3d at 106 (even land that is already occupied by commercial and manufacturing facilities, or undeveloped land that is not for sale or lease, is not to be automatically deemed unavailable).

This dispute, therefore, turns on whether there are enough sites for adult entertainment for a city of Mount Vernon's size and population.

Both sides acknowledge that there is no bright line test for how much land ensures reasonable alternative avenues of communication. Courts have considered a variety of criteria, from the percent of land allocated to such uses to the supply and demand within the population, e.g. the number of sites compared with the number of adult businesses currently in operation or seeking to open. *Hickerson,* 146 F.3d at 108 (city met its burden by showing land could accommodate 500 establishments, which was three times the number of current establishments); *Diamond v. City of Taft,* 215 F.3d 1052, 1057–58 (9th Cir. 2000)(where only one party is seeking to open a business, seven sites were sufficient); New York courts have found sufficient alternatives exist where ample space exists for adult uses, and enforcement of the regulation will not substantially reduce accessibility to those outlets. *T & A's, Inc. v. Town Board of the Town of Ramapo,* 109 F.Supp.2d 161, 173 (S.D.N.Y.2000) citing *Stringfellow's,* 91 N.Y.2d at 402, 671 N.Y.S.2d 406, 694 N.E.2d 407; *Town of Islip v. Caviglia,* 73 N.Y.2d 544, 555, 542 N.Y.S.2d 139, 540 N.E.2d 215 (1989). Although *Renton* referred to the percent of total land available, district courts have not been precise as to whether the relevant percent is based on the total land or the percent of land available for commercial uses and have applied both methods. *See e.g., Tri–State Video Corp. v. Town of Ste-*

*phentown,* 97 Civ. 965, 1998 WL 72331 (N.D.N.Y. Feb.13, 1998)(67% of commercial land is sufficient). In the case of Mount Vernon, total commercial land area, rather than total land area, seems the appropriate choice. Mount Vernon is an old suburb. It is fully "built out"; there is very little undeveloped land. So the character of the municipality is set. And the character of the municipality is overwhelmingly residential.

■ Plaintiff relies heavily on the fact that the Mount Vernon zoning code leaves less than one percent of Mount Vernon's land (.67% of its relatively meager amount of land zoned for commercial use) available for adult businesses. True though this be, "the constitution does not mandate that any minimum percentage of land be made available for certain types of speech. What it does require is that zoning schemes that regulate the location of speech provide a 'reasonable opportunity' to disseminate the speech at issue." *North Ave. Novelties, Inc. v. City of Chicago,* 88 F.3d 441, 445 (7th Cir.1996) quoting *Renton,* 475 U.S. at 52, 106 S.Ct. 925. *See also, Allno Enterprises, Inc. v. Baltimore County, MD,* 10 Fed.Appx. 197, 201–02 (4th Cir. June 1, 2001). Moreover, as the City has pointed out, courts have routinely upheld zoning ordinances where less than 1% of the land was available for adult businesses to operate. *See Allno Enterprises, Inc.,* 10 Fed.Appx. 197, 201–02 (upholding ordinance that leaves only .16% of the total acres in the county available); *Z.J. Gifts D–4, L.L.C. v. City of Littleton,* 311 F.3d 1220, 1240 (10th Cir.2002), overruled in part on other grounds, *City of Littleton, Colo. v. Z.J. Gifts D–4, L.L.C.,* —— U.S. ——, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) (upholding ordinance that leaves "just under" one percent of the city's land available); *North Ave. Novelties, Inc. v. City of Chicago,* 88 F.3d 441, 445 (7th Cir.1996)(upholding ordinance that leaves "less than one percent" of the land within

the city limits); *D.H.L. Associates, Inc. v. O'Gorman,* 6 F.Supp.2d 70 (D.Mass.1998) (upholding ordinance despite fact that less than one-tenth of one percent of the land in the town available), *aff'd.* 199 F.3d 50 (1st Cir.1999).

I am aware of only two cases within this Circuit in which a court concluded that there were insufficient alternative avenues of communication. In *Cochran v. Town of Marcy, NY,* 143 F.Supp.2d 235 (N.D.N.Y. 2001), Judge Hurd concluded that the Town of Marcy's zoning ordinance effectively precluded plaintiff from operating his adult business, and granted plaintiff's request for a preliminary injunction. Judge Hurd concluded that there were no sites available for adult entertainment venues in the Town of Marcy, based on the unrebutted testimony of plaintiff's expert, who factored in all the "between business establishment" spacing requirements and determined that no locations were available. *Cochran v. Town of Marcy, NY,* 143 F.Supp.2d at 238.

In *T & A's, Inc. v. Town Board of the Town of Ramapo,* then-District Court Judge Barrington D. Parker concluded that Ramapo's zoning ordinance was unconstitutional because, inter alia, it failed to allow for reasonable alternative avenues of communication. *T & A's, Inc.,* 109 F.Supp.2d at 173. In that case, the plaintiff, T & A's, operated the only existing adult entertainment business in the town of Ramapo. The 50–seat capacity "bar" was located in the village of Monsey, a predominantly Orthodox Jewish community. Despite the fact that either T & A or another adult entertainment business had operated on the site for twenty six years, in 1996, Ramapo adopted a zoning ordi-

nance (1) requiring adult entertainment businesses to be sited in a commercial shopping district and (2) prohibiting them from, among other things, operating within 1000 feet of any school or religious institution. The size of the buffer zone was chosen because a Jewish school was sited 800 feet away from T & A's—in other words, it was selected so that the Town could close the existing business down. *Id.* at 163. At trial, the town offered evidence that showed the ordinance restricted adult businesses to .6% of Ramapo's developable area, or a total of nine potential sites. The evidence, however, demonstrated that there were actually many fewer sites available once lot line measurements, environmental concerns or restrictive covenants were factored into the calculus. Judge Parker found that just .35% of Ramapo's developable land was likely available for adult uses, and concluded that this was so de minimis as to effectively deny plaintiff—which was being forced out of its existing location—a reasonable alternative avenue of communication.

Although illustrative, neither *T & A's* nor *Cochran* requires a finding that there are insufficient alternatives in this case. What percent of land is appropriate in a given town or region will vary, but "those differences in no way imply that the regions with lower percentages are acting unconstitutionally." *North Ave. Novelties,* 88 F.3d at 445. For example, Ramapo occupies a land area that is over ten times the size of Mount Vernon and has a population of 108,905, less than twice that of Mount Vernon. One would expect the needs of these two different communities to vary, and no magical percentage can determine what is appropriate.[4]

---

4. The Court is constrained to take judicial notice of the fact that Ramapo, unlike Mt. Vernon, contains a substantial amount of space available for development, and is highly likely to see additional commercial develop-

ment within its borders. Thus, Judge Parker's decision to focus on the percentage of total developable area is not necessarily at odds with my determination that the relevant

The key facts in this case are two. First, there are presently four sites available for new adult entertainment venues in Mt. Vernon. Second, once someone opens an adult entertainment business on one of those sites, the other three will no longer be available, due to the requirement that there be a 1000 foot buffer between such establishments. Thus, under the current regulations, Mount Vernon could have two adult entertainment facilities within its 4.36 square miles (Sue's Rendezvous in downtown Mount Vernon and plaintiff's business on Edison Avenue).

Plaintiff asserts that the ordinance is unconstitutional, because a single site in addition to Sue's Rendezvous does not provide the city with sufficient alternative avenues of communication. Defendants counter that this fact is irrelevant, since plaintiff (who has four sites from which to choose) is the only person seeking to open such a business. They cite the Ninth Circuit's decision in *Diamond* and the Tenth Circuit's decision in *Z.J. Gifts* in support of their argument.

In *Diamond v. City of Taft*, 215 F.3d 1052, 1057–58 (9th Cir.2000), the plaintiff was the first person to seek to open an adult business in the defendant city. There was a similar 1000 foot buffer zone requirement, under which the district court concluded only three sites could operate simultaneously. However, the Ninth Circuit held that the correct number to consider was the seven sites determined to be available within the real estate market—before application of the buffer zone. The court held the zoning ordinance to be constitutional, because "as the first person to seek to open an adult business in Taft, *Diamond* is not limited by the 1,000–foot restriction in choosing a site for his business. He can choose among all seven sites" which provide sufficient alternative avenues of communication. The Ninth

Circuit has since recognized that *Diamond* presented a special case where plaintiff was the first person to seek to open a site and the needs of businesses would need not be considered, and has recognized that application of the separation requirement in other circumstances with more operational adult businesses is necessary. *See Isbell v. City of San Diego*, 258 F.3d 1108, 1113 (9th Cir.2001).

In *Z.J. Gifts*, 311 F.3d at 1241 FN 19, the Tenth Circuit rejected plaintiff's contention that Littleton's zoning ordinance did not provide for sufficient alternative avenues of communication where 1.2 to 1.3 percent of the land in Littleton was available and plaintiff (the only adult business operator) had 20 sites from which to choose. In dismissing plaintiff's attacks on the ordinance's location restrictions (which the Court held were severable from the pre-application requirements it had declared unconstitutional), the Tenth Circuit observed, "ZJ has never argued that we should incorporate the [inter-adult entertainment business] spacing requirements into our analysis, and given that ZJ is the only adult business currently operating or seeking to operate in Littleton, such an adjustment would be inappropriate in the first place."

■ I am not at all certain that the Second Circuit would adopt the reasoning of these cases. However, I agree with the Ninth Circuit's statement that, "Data regarding the number of sites available for adult use is meaningless without a *contextual basis* for determining whether that number is sufficient for that particular locale." *Young v. Simi Valley*, 216 F.3d 807, (9th Cir.2000)(emphasis added). A context-specific test needs to be applied in each case. Just as there is no minimum percentage required, "There is no constitu-

factor in Mt. Vernon's case is the percentage of commercial land area.

tional requirement that a city make available a certain number of sites." *Diamond,* 215 F.3d at 1056 (citing *Lakeland Lounge of Jackson, Inc. v. City of Jackson, Miss.,* 973 F.2d 1255, 1260 (5th Cir.1992)). Since context is so very important, and so fact-specific, it necessarily limits the precedential value of any particular decision.

■ A combination of circumstances persuades me that, in the particular context of Mt. Vernon, the zoning ordinance as written allows for sufficient alternative avenues of communications.

First, Mount Vernon has not sought to zone its pre-existing adult entertainment businesses out of the city, as Ramapo did in *T & A.* Instead Mount Vernon adopted a zoning ordinance that allowed Sue's Rendezvous and Mr. G's to continue operating in their current locations indefinitely while providing additional sites for adult entertainment businesses.

Second, although Mount Vernon has very little property available for any commercial use (slightly over 1/2 an acre), plaintiff himself has four sites from which to choose—plaintiff does not dispute the evidence on this point—so his own avenues of communication are not unduly restricted.

Third, there is no evidence that any other potential adult entertainment entrepreneurs will be disappointed if plaintiff opens his bar on one of the Edison Avenue sites. As the undisputed facts show, plaintiff is the only person who has sought to open—or even asked about opening—an adult business in Mt. Vernon since the new zoning ordinance was adopted. The zoning ordinance allows two adult businesses to operate simultaneously; that is the number of adult entertainment facilities that have operated in Mt. Vernon for the last forty years. It bears noting that for most of that period, there were *no* restrictions on the siting of adult entertainment facilities in Mt. Vernon. So viewing demand from the perspective of the adult entertainment provider, one additional site (which gives the city two de facto adult entertainment sites) should be plenty.

Fourth, it is simply not the case that, under the current zoning laws, there can never be more than two sites within Mt. Vernon's commercial area available for adult entertainment. Neighborhoods change. The closure of a church or day care center or the sale of a non-conforming residential home in the industrial district to a developer would result in the creation of additional sites where special permits could issue. Those sites are not available to plaintiff today, of course, but plaintiff, who is not constrained by the 1,000 foot buffer rule, has four sites available to him today.

Fifth, area residents are not lacking in adult entertainment options. The City of Mt. Vernon, unlike the Towns of Marcy or Ramapo, is a dense urban-suburban locale. Right over that border—literally on the other side of some Mt. Vernon streets—is New York City. There, hundreds of adult entertainment venues are readily accessible to Mt. Vernon residents via dozens of streets and highways and by public transportation in many forms—subway[5], bus and train. Indeed, the record reveals that some of those hundreds of adult entertainment venues are just across the Mt. Vernon/Bronx border (Bass Report at 3). Mt. Vernonites who are looking for adult entertainment—unlike the residents of the exurban Town of Ramapo, whose constitutional rights were of concern in *T & A,* or the good folk of Marcy, a rural area locat-

---

**5.** A subway stop for the 2 and 5 trains sits virtually on the Mt. Vernon/Bronx border at 241st Street.

ed sixty miles from Syracuse in upstate New York—are not without adult entertainment in their community, and with so many options readily available, will not be unduly inconvenienced by the fact that only two such establishments are operating within the city's borders.[6]

I reject plaintiff's contention that defendants have not presented sufficient evidence regarding the supply and demand for adult entertainment in Mount Vernon. Plaintiff himself has not offered a shred of evidence that there is a great demand for additional adult entertainment sites in Mt. Vernon—demand by providers or demand by consumers. The information provided in the Post Declaration—information about Mount Vernon's historically low demand for adult entertainment and the fact that since 1999 no one has attempted to open or inquired about opening a new adult entertainment business—is, by contrast, highly relevant, and useful in determining whether *sufficient* alternatives exist given Mount Vernon's history. *See Isbell*, 258 F.3d at 1114 (evidence of total demand is "an important factor to be compared with supply in determining the adequacy of alternative avenues of expression.") *Woodall v. City of El Paso*, 49 F.3d 1120, 1126 (5th Cir. 1995) ("Adult [b]usinesses had to show that the areas left open to them were inadequate to satisfy the demand for adult business locations."); *Buzzetti v. City of New York*, 140 F.3d 134, 140 (2d Cir.1998) (ordinance constitutional that allowed for the operation of approximately 500 adult businesses where there were fewer than 200 in existence); *801 Conklin Street Ltd. v. Town of Babylon*, 38 F.Supp.2d 228, 242 (E.D.N.Y.1999) (requesting, among other things, more information on the number of adult entertainment businesses in operation and the number of applications by

prospective adult use businesses for Special Exception Use Permits to assist determination of whether sufficient alternatives existed). So here, I credit the testimony provided by Post, the Commissioner of Mount Vernon's Department of Planning & Community Development, on such matters as to the number of adult businesses operating and seeking to operate in Mount Vernon, and I conclude that it offers a reasonable barometer of the demand for adult entertainment in Mount Vernon.

CONCLUSION

The Defendants' Motion for Summary Judgment is granted. The Plaintiff's Motion for Summary Judgment is denied. The case is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants and close the file.

This constitutes the decision of the Court.

---

**6.** Mt. Vernon also borders on the much larger City of Yonkers. Unfortunately, the record does not contain any data about adult enter-tainment in Yonkers, but the Court is aware that quite a few such establishments exist.